[Crim. No. 6203.   In Bank.   Aug. 19, 1958.]

## THE PEOPLE, Respondent, v. CECIL HERMAN WARD, Appellant.

Robert A. Farrell and J. Richard Thomas, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

SHENK, J.—This is an appeal from a judgment imposing the death penalty after verdicts finding that the defendant was guilty of murdering Nell and Brenda Parris as charged in two counts of an indictment and that the murders were of the first degree. Following these verdicts proceedings were then taken pursuant to section 190.1 of the Penal Code for the purpose of determining the punishment. The penalty of death was imposed as to each count. Thereafter, on his plea of not guilty

by reason of insanity as to each count, the defendant was found to be sane at the time of the commission of the offenses. A motion for a new trial or modification of the judgment was denied.

It appears that during the afternoon of August 18, 1957, the defendant procured a gun. Prior to that time he had made statements concerning his intention to kill members of his wife's family. At about 8:30 he appeared at the back door of the home of Nell Parris, his mother-in-law. In addition to the defendant's wife, Bobbie Ward, and their infant son, there was present in the house at that time Brenda Parris, who was the 13-year-old sister of Bobbie. The defendant demanded that his wife leave the premises with him. Upon her refusal to do so he broke in the back door. His wife fled by way of the front door. The defendant pursued and caught up with her a few hundred feet away. During his pursuit an automobile driven by Joe Shatto arrived on the scene. In addition to Mr. Shatto the automobile was occupied by Nell Parris, by Mrs. Shatto who was the sister of Nell Parris, and by three children. Mrs. Shatto got out of the car and approached the defendant and his wife. The defendant had a revolver in his hand and threatened to kill his wife if she would not go with him. All three persons returned to the house and the defendant and his wife went in. She asked for time to get ready to leave and upon the defendant's refusal to grant her request she again ran out of the house and away from the premises, the defendant following her. Nell Parris alighted from the automobile for the declared purpose of telephoning the police, and Brenda Parris came out of the house and was entering the automobile with the defendant's infant son in her arms. The defendant approached the automobile and stated that if his wife would not come with him he would shoot Brenda. Without further delay he put the gun close to her head and shot her. Thereupon Nell Parris attempted to strike him with her hand and he shot her also. He fired several shots into her body as she lay on the ground. Both Nell and Brenda Parris died as a result of the gunshot wounds so inflicted. The defendant was apprehended shortly after the homicides, and at about 3:30 the following morning made a statement in which he admitted that he procured the gun for the purpose of killing his wife, and that he shot Nell Parris and someone he thought to be Brenda.

The defendant was represented at the trial by appointed counsel. He did not testify in his own defense. Following

the verdicts of guilty on the issues raised by the pleas of not guilty, the trial proceeded before the same jury for a determination of the penalties. After the verdicts were returned fixing the penalty at death the trial again proceeded before the same jury on the issues raised by the pleas of not guilty by reason of insanity. The jury received the evidence of three medical examiners appointed by the court, and, as stated, found the defendant to have been sane at the time the offenses were committed.

The defendant contends without elaboration that there is insufficient evidence to warrant a conviction of first degree murder on either count. That contention is without merit. There can be no question as to the identity of the perpetrator of the crimes or that the offenses were committed "with malice aforethought." (Pen. Code, § 187.) The question then for the jury was whether the defendant had acted with deliberation and premeditation. (Pen. Code, § 189.) There was ample evidence of his intention formulated prior to the time he arrived at the premises to take a life or lives of members of his wife's family and of an intention continuing to the time of the homicides. Those intentions were disclosed by evidence on the part of numerous witnesses of the defendant's actions and of his direct threats. There was no substantial evidence to contradict the showing of premeditation and deliberation. The verdicts are supported by overwhelming evidence.

The defendant contends that trying him pursuant to the provisions of section 190.1 of the Penal Code constituted the imposition of an ex post facto law as to the offenses charged and was in violation of the state Constitution. (Art. I, § 16; see also United States Constitution, art. I, § 9(3), to the same effect.) Section 190.1 was added to the Penal Code by Statutes 1957, page 3509. It became effective on September 11, 1957, after the commission of the offenses charged but prior to the trial. The section provides in its pertinent parts: "The guilt or innocence of every person charged with an offense for which the penalty is in the alternative death or imprisonment for life shall first be determined, without a finding as to penalty. If such person has been found guilty of an offense punishable by life imprisonment or death, there shall thereupon be further proceedings on the issue of penalty, and the trier of fact shall fix the penalty. Evidence may be presented at the further proceedings on the issue of penalty, of the circumstances surrounding the crime, of the defendant's background and history, and of any facts in aggravation or mitigation of the

penalty. The determination of the penalty of life imprisonment or death shall be in the discretion of the court or jury trying the issue of fact on the evidence presented, and the penalty fixed shall be expressly stated in the decision or verdict. . . . If the defendant has pleaded not guilty by reason of insanity at the time of commission of the offense, the trier of fact, after the determination of the penalty, shall thereupon determine whether or not defendant was sane at the time of commission of such offense. . . . If the defendant was convicted by a jury, the trier of fact on the issue of penalty and the issue of sanity, if any, shall be the same jury. . . ." No contention is made that proceedings were not taken in accordance with the above provisions of the Penal Code.

■ In general, "any law which was passed after the commission of the offense for which the party is being tried is an *ex post facto* law, when it inflicts a greater punishment than the law annexed to the crime at the time it was committed [citations] ; or which alters the situation of the accused to his disadvantage. . . ." (*Ex parte Medley, Petitioner*, 134 U.S. 160, 171 [10 S.Ct. 384, 33 L.Ed. 835].) ■ Changes which may be designated as procedural do not, as a rule, come within the ex post facto doctrine, but that in itself is not the true test. In *Thompson* v. *Utah*, 170 U.S. 343, the following appears on pages 351 and 352 [18 S.Ct. 620, 42 L.Ed. 1061] ; "It is sufficient now to say that a statute belongs to that class which by its necessary operation and 'in its relation to the offense, or its consequences, alter the situation of the accused to his disadvantage.' [Citations.] Of course, a statute is not of that class unless it materially impairs the right of the accused to have the question of his guilt determined according to the law as it was when the offense was committed. And, therefore, it is well settled that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offense charged against him. Cooley in his Treatise on Constitutional Limitations, after referring to some of the adjudged cases relating to *ex post facto* laws, says: 'But so far as mere modes of procedure are concerned, a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every

case was to be conducted only in accordance with the rules of practice, and heard only by the courts in existence when its facts arose. The legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime.' . . . . The difficulty is not so much as to the soundness of the general rule that an accused has no vested right in particular modes of procedure, as in determining whether particular statutes by their operation take from an accused any right that was regarded, at the time of the adoption of the Constitution, as vital for the protection of life and liberty, and which he enjoyed at the time of the commission of the offense charged against him.''

The defendant contends that during that portion of the present proceeding conducted for the purpose of determining penalty, evidence of his jail and juvenile court records was admitted; that such evidence had no relevancy to the cause and would not have been admissible under the rules of evidence in effect prior to the adoption of section 190.1 (see *People* v. *Barclay,* 40 Cal.2d 146, 157 [252 P.2d 321]), and that the change in procedure thus altered the situation to his substantial disadvantage and constitutes the enactment of an ex post facto law.

Changes of a similar nature have heretofore been approved as not constituting ex post facto laws in this state. In *People* v. *Mortimer,* 46 Cal. 114, a change in the law which permitted the prosecution to both open and close the argument to the jury was approved. In *People* v. *O'Bryan,* 165 Cal. 55 [130 P. 1042], it was held that article VI, section 4½ of the California Constitution was applicable to offenses committed prior to its adoption and was not violative of the federal constitutional provision prohibiting the passage of an ex post facto law. And in *People* v. *Talkington,* 8 Cal.App.2d 75, 81-83 [47 P.2d 368], it was held that section 19 of article VI of the state Constitution, which permits comments by the judge on the evidence and the testimony and credibility of the witnesses, was applicable to crimes committed prior to the adoption of the amendment and was not an ex post facto law.

The United States Supreme Court has declared the following changes not to be ex post facto within the meaning attributed to that clause in the federal Constitution: A change in inflicting the death penalty from hanging to electrocution

(*Malloy* v. *State of So. Carolina,* 237 U.S. 180 [35 S.Ct. 507, 59 L.Ed. 905]); a change which permitted witnesses who previously were incompetent to testify, to thereafter testify to the commission of a crime (*Hopt* v. *Utah,* 110 U.S. 574 [4 S.Ct. 202, 28 L.Ed. 262]); a change which provided for an appeal by the state where none existed before (*Mallett* v. *North Carolina,* 181 U.S. 589 [21 S.Ct. 730, 45 L.Ed. 1015]); a change which provided for a separate trial of persons jointly indicted (*Beazell* v. *Ohio,* 269 U.S. 167 [46 S.Ct. 68, 70 L.Ed. 216]); a change in the place of trial (*Gut* v. *State of Minnesota,* 9 Wall. (U.S.) 35, 19 L.Ed. 573); and a change which extended the applicable statute of limitations (*Falter* v. *United States,* 23 F.2d 420, cert. denied 277 U.S. 590 [48 S.Ct. 528, 72 L.Ed. 1003]). Most pertinent to the defendant's contention that the doctrine includes a change in the law which permits the reception of evidence which previously would have been excluded, is the decision of the United States Supreme Court in *Thompson* v. *Missouri,* 171 U.S. 380 [18 S.Ct. 922, 43 L.Ed. 204]. In that case the defendant was convicted of murder in the first degree largely upon the evidence of his authorship of a certain prescription for strychnine and a threatening letter written to the deceased, a victim of strychnine poisoning. The defendant's authorship was established by a comparison with letters written by the defendant to his wife. The Supreme Court of Missouri held that it was error to admit in evidence the letters to the defendant's wife and reversed the judgment. Prior to the second trial the Legislature passed an act which permitted the letters to be put in evidence and the defendant was again convicted. The judgment was affirmed by both the Supreme Court of Missouri and the Supreme Court of the United States. As against a contention that the change in the law of evidence which permitted new and different evidence to be heard, the Supreme Court of the United States stated beginning at page 386: "Applying the principles announced in former cases . . . we adjudge that the statute of Missouri relating to the comparison of writings is not *ex post facto* when applied to prosecutions for crimes committed prior to its passage. If persons excluded, upon grounds of public policy, at the time of the commission of an offense, from testifying as witnesses for or against the accused, may, in virtue of a statute, become competent to testify [see *Hopt* v. *Utah, supra,* 110 U.S. 574], we cannot perceive any ground upon which to hold a statute to be *ex post facto* which does

nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed. The Missouri statute, when applied to this case, did not enlarge the punishment to which the accused was liable when his crime was committed, nor make any act involved in his offense criminal that was not criminal at the time he committed the murder of which he was found guilty. It did not change the quality or degree of his offense. Nor can the new rule introduced by it be characterized as unreasonable—certainly not so unreasonable as materially to affect the substantial rights of one put on trial for crime. The statute did not require 'less proof, in amount or degree,' than was required at the time of the commission of the crime charged upon him. It left unimpaired the right of the jury to determine the sufficiency or effect of the evidence declared to be admissible, and did not disturb the fundamental rule that the State, as a condition of its right to take the life of an accused, must overcome the presumption of his innocence and establish his guilt beyond a reasonable doubt.''

The holding in the Thompson case was followed in Ohio in a decision very much in point. In *Beckman* v. *State*, 122 Ohio St. 443 [5 N.E.2d 482], a statutory change contrary to prior law provided that in a criminal trial proof of acts by the defendant of a nature similar to that with which he was charged could be made ''notwithstanding that such proof may show or tend to show the commission of another or subsequent crime by the defendant.'' The Supreme Court of that state held that the statute did not constitute an ex post facto law when applied to an offense committed prior to its enactment.

From the foregoing it is apparent that the Legislature in enacting section 190.1 ''did not make that a criminal act which was innocent when done; did not aggravate an offense or change the punishment and make it greater than when it was committed; did not alter the rules of evidence, and require less or different evidence than the law required at the time of the commission of the offense; and did not deprive the accused of any substantial right or immunity possessed by'' the defendant at the time of the commission of the offense. (*Mallett* v. *North Carolina, supra*, 181 U.S. 589, 597; see also *People* ex rel. *Pincus* v. *Adams*, 274 N.Y. 447 [9 N.E.2d 46, 110 A.L.R. 1303].) [5] The changes effected by the enactment constituted merely an alteration in the conditions deemed necessary for

the orderly and just conduct of criminal trials and did not deprive the defendant of any substantial personal right within the meaning of the constitutional prohibitions of ex post facto laws.

The defendant complains that certain of his offered instructions relating to the elements of murder of the first degree were not given by the court. But he does not point to what, if any, portion of the instructions which were given he objects to; nor does he state in what manner they are claimed to be deficient. The court properly instructed the jury as to the elements of the crime charged and adequately covered the points of law included by the defendant in his proposed instructions.

■ Complaint is made of certain statements made by the trial judge relating to the penalties which might be imposed. At the beginning of the trial he stated to the jury that the proceedings would be in three phases. As to the second phase he said that evidence would be taken relating to the defendant's background, his previous record, and his activities prior to the time of the commission of the offenses charged. Upon objection that such a statement inferred that the defendant had a previous "record" the court explained that "I merely mentioned it in the sense that each one of us has a previous record. It may be an excellent record, and it may be a poor record, and I am not advised, I have no knowledge of what Mr. Ward's record is. I spoke of record in the term of history. So the jury will understand I am not telling you that the defendant has any particular bad record, but you are going to hear it, if the occasion calls for it, what the defendant's background has been." No error is apparent in this statement.

■ Objection is made to a statement by the court advising the jury "that a prisoner sentenced either to death or life imprisonment may be pardoned or may have his sentence reduced by the governor and that a prisoner serving a life sentence may be paroled but not until he has served at least seven years." The comment was not objectionable. (*People v. Barclay, supra,* 40 Cal.2d 146, 158.)

■ It is contended that the court did not fully advise the jurors that the question of penalty was a matter resting within their sole discretion. In this connection the court instructed as follows: "With respect to the penalty no burden of proof is cast upon the people or the defendant to show by

any particular quantum of evidence which penalty should be imposed by you. The Supreme Court of the State of California has explained the matter in this language: 'Section 190 does not impose the death penalty leaving discretion with the jury to substitute a lesser penalty. It imposes neither death nor life imprisonment, but with a perfectly even hand presents the two alternatives to the jury. The legislature perhaps because of the very gravity of the choice has formulated no rules to control the exercise of the jury's discretion.' " No error appears in this instruction.

It is contended that the district attorney was guilty of prejudicial misconduct. In attempting to introduce into the record certain photographs of the deceased persons, the prosecutor stated as his reasons, ". . . not only is it material from the standpoint of identifying the body, of course, although we have the stipulation here, we have the appellate courts to go through whenever we have an——." The objections of defense counsel cut short the prosecutor's further remarks. The court sustained the objection to the admission of the photographs but did not order the prosecutor's remarks relating to the appellate courts stricken from the record. The defendant now claims that the right of appeal was not a proper subject for consideration by the jury, and was intended to induce the jury to place a lighter estimate on their duties than otherwise would have been indicated, relying on *People* v. *Beggs*, 178 Cal. 79, 92 [172 P. 152]. The remarks in the Beggs case held to be "improper" related to the People's inability to take an appeal in that case and at that time and in no way had a bearing on the issues in the present case. Moreover the criticized remarks were held not to have prejudiced the defendant in that case.

The defendant contends that the district attorney was also guilty of prejudicial misconduct in offering the defendant's wife as a witness for the prosecution. An objection to her competency as a witness was sustained and she did not testify. Section 1322 of the Penal Code provides: "Neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties, except with the consent of both. . . ." There are other exceptions not here applicable. Similar action on the part of the district attorney was held to be "improper and unwarranted" but not prejudicial in *People* v. *Klor*, 32 Cal.2d 658, 663 [197 P.2d 705]. Under more aggravated circumstances it was held to be prejudicial in *People* v. *Wilkes*, 44

Cal.2d 679 [284 P.2d 481]. The conduct of the district attorney in this respect in the present case is subject to the same criticism and should not have taken place, but in consideration of the entire record it was not so seriously reprehensible as to require a reversal.

Other claims of misconduct on the part of the district attorney are without merit. The defendant received a fair and impartial trial, and the evidence in support of the verdicts as stated is overwhelming. The record herein presented appears to be the first to be reviewed by this court wherein the provisions of section 190.1 of the Penal Code have been applied. The trial court correctly followed the provisions of that section. In doing so the defendant was not deprived of any right, constitutional or statutory, to which he was entitled at the time the offenses were committed.

The judgment and order denying the motion for a new trial are affirmed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

Appellant's petition for a rehearing was denied September 17, 1958.