[Crim. No. 1085. Fifth Dist. May 18, 1972.]

THE PEOPLE, Plaintiff and Appellant, v.
DELSA ANN SNIPE et al., Defendants and Respondents.

744

## Counsel

Evelle J. Younger, Attorney General, Daniel J. Kremer and James T. McNally, Deputy Attorneys General, for Plaintiff and Appellant.

Gilbert W. Boyne and Guy A. Brooks, under appointments by the Court of Appeal, and Moorad & Boyne for Defendants and Respondents.

## Opinion

**GARGANO, J.**—On March 1, 1969, respondent, Delsa Ann Snipe, brought her 3-year-old daughter Sonja Christol to the Modesto City Hos-

pital for treatment. The child had been brutally beaten on February 26, 1969, and had sustained a complete rupture of the duodenum, causing leakage of the bowel contents; it was the medical opinion that a massive blow to the abdomen caused the rupture of the bowel. Thereafter, Mrs. Snipe and respondent Charles Franklin Tademy were convicted of wilful cruelty and of inflicting unjustifiable punishment on a child in violation of Penal Code section 273a and sentenced to state prison for the term prescribed by law.

On November 29, 1970, some 21 months after the beating, Sonja Christol died, apparently from the injuries sustained as a result of the beating. At the time of the child's death, section 194 of the Penal Code, as amended by the Legislature during its 1969 session, read, in pertinent part, as follows: "To make the killing either murder or manslaughter, it is requisite that the party die within three years and a day after the stroke received or the cause of death administered."

However, on February 26, 1969, when the child was beaten, the section provided: "To make the killing either murder or manslaughter, it is requisite that the party die within a year and a day after the stroke received or the cause of death administered; . . ."

On January 25, 1971, an information was filed in the Superior Court of Stanislaus County charging respondents with murder in violation of section 187 of the Penal Code; it was the People's theory that because Sonja Christol died within three years and a day after she was beaten, and because the 1969 amendment to section 194 of the Penal Code was in effect at the time of her death, respondents could be prosecuted for the crime of murder. Respondents moved for a dismissal pursuant to Penal Code section 995, and their motion was granted; the trial judge held that the application of section 194 as amended, to the death of the child, was ex post facto and constitutionally impermissible. This appeal followed.

The People do not deny that the death of the victim in a murder case relates back to the unlawful act which occasioned it, and that ordinarily the law in effect at that time is controlling. (*People* v. *Gill,* 6 Cal. 637.) They argue that the ex post facto doctrine has no application to the 1969 amendment to section 194 of the Penal Code because the section states an evidentiary rule which does not change the quality or degree of the crime or the burden of proof. (*People* v. *Ward,* 50 Cal.2d 702 [328 P.2d 777].)[1] On the other hand, respondents assert that if the 1969 amendment

---

[1]*People* v. *Ward, supra,* 50 Cal.2d 702, was overruled on another point in *People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].

is applied to this case, it would deprive them of a vital defense in contravention of article I, section 10, of the United States Constitution. They also contend that if a retroactive application of the amendment is not proscribed by the ex post facto doctrine, then it is prohibited by section 3 of the Penal Code. This section, with reference to the Penal Code, states: "No part of it is retroactive, unless expressly so declared."[2]

It is of course essential to a successful prosecution for the crime of murder or manslaughter that the victim die within the time prescribed in Penal Code section 194. The rule finds its genesis in the common law when, to circumvent the inherent difficulty of trying to prove the cause of death of a person who was injured by the act of another and who did not die immediately after he was injured, it merely was presumed that he died from some other cause unless death occurred within a year and a day after the injury was inflicted. (40 Am.Jur.2d, Homicide, § 14, p. 305.) When the common law rule was incorporated into the Criminal Practice Act of this state, it was not made an element of the offense itself; it was made "a rule of evidence merely." (*People* v. *Murphy*, 39 Cal. 52, 55; *People* v. *Clark*, 106 Cal.App.2d 271 [235 P.2d 56].)

■ Respondents' argument that Penal Code section 3 prohibits the retroactive application of the amendment to section 194 would have merit if the amendment to the section changed an element of the crime of murder. However, according to the decisional law, the amendment makes a procedural change which modifies a rule of evidence, and such changes do not relate to the crime itself, the manner of its commission or the punishment. The change made in this case relates only to the proof; it makes it possible for the prosecution to prove at respondents' trial that Sonja Christol died as a result of the beating she received in February 1969 even though the death did not occur within the common law period of a year and a day. Because the Legislature did not declare otherwise, it must be presumed that the change applies to any trial or proceeding commencing after its effective date; when so applied, it is not retroactive within the ambit of section 3. (See *People* v. *Ward, supra*, 50 Cal.2d 702.)

We consider the ex post facto doctrine.

■ An ex post facto law is a retrospective law applying to offenses

---

[2]Penal Code section 3 is a rule of construction; it adheres to the proposition that a statute is presumed to be prospective and that legislative changes do not apply retroactively unless the Legislature expresses its intention that they should do so. (*People* ex rel. *City of Bellflower* v. *Bellflower County Water Dist.*, 247 Cal.App.2d 344 [55 Cal.Rptr. 584]. The rule should not be followed blindly; it should be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent.

committed before its enactment which by its necessary operation and in its relation to the offense, or its consequences, changes the situation of the defendant to his detriment. (*Thompson* v. *Utah,* 170 U.S. 343, 351-352 [42 L.Ed.2d 1061, 1066-1067, 18 S.Ct. 620]; *DeWoody* v. *Superior Court,* 8 Cal.App.3d 52, 55 [87 Cal.Rptr. 210]; *People* v. *Ward, supra,* 50 Cal.2d 702, 707.) ■ Constitutional limitations, therefore, are transgressed by retroactive procedural changes if they operate to deny the accused a vested defense or if they affect him in a harsh or arbitrary manner. (*Kring* v. *Missouri,* 107 U.S. 221 [27 L.Ed. 506, 2 S.Ct. 443].) As the United States Supreme Court pointed out in *Beazell* v. *Ohio,* 269 U.S. 167, 171 [70 L.Ed. 216, 218, 46 S.Ct. 68], the distinction between a procedural change which transgresses the Constitution if given a retroactive application and one which does not is a matter of degree, and each case must be decided on its own facts.

Following are a few examples of procedural changes which were deemed permissible even though they were retroactive: a change permitting witnesses who previously were incompetent to testify thereafter to the commission of a crime (*Hopt* v. *Utah,* 110 U.S. 574 [28 L.Ed. 262, 4 S.Ct. 202]); a change which gave the state the right of appeal where none existed before (*Mallett* v. *North Carolina,* 181 U.S. 589 [45 L.Ed. 1015, 21 S.Ct. 730]); a change permitting the reception of evidence which previously would have been excluded (*Thompson* v. *Missouri,* 171 U.S. 380 [43 L.Ed. 204, 18 S.Ct. 922]); a change in the statute of limitations (*Falter* v. *United States,* 23 F.2d 420).

■ The 1969 amendment to section 194 does not contravene constitutional proscriptions. The child was injured on February 26, 1969, and the amendment became effective in November of that year, several months *before* the immunity of the earlier statute had attached. The change in the time of death requirement, therefore, does not deprive respondents of a vested defense. Neither does it affect the quality or quantum of the People's evidence or the burden required to establish respondents' guilt. The procedural change merely modifies an archaic common law impediment and was made, obviously, by the Legislature in recognition of the well known fact that modern medicine not only has made it possible to prolong the life of an intended murder victim but also has made it feasible to establish the cause of death even if the victim dies several years after the injury. To paraphrase Mr. Justice Shenk's words in *People* v. *Ward, supra,* 50 Cal.2d 702, 709-710, if a change allowing the admission of evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence in effect at the time the offense was committed is not ex post facto, we cannot perceive any ground on

which to hold a statute to be ex post facto which does nothing more than extend the time during which the state can prove its case against an accused murderer through the use of essentially the same medical evidence it would have used if the victim had not lived beyond the pre-existing arbitrary requirement of a year and a day. Clearly, the 1969 amendment, as applied to the facts of this case, is not harsh or oppressive in the constitutional sense.

The opinion in *Falter* v. *United States, supra,* 23 F.2d 420, is cogent. In that case the defendants were accused of conspiracy to defraud the United States. At the time the crime was committed, the statute of limitations was three years, but two years later the statute was amended, extending the limitation to six years. After conviction the defendants sought reversal because the accusatory pleadings, albeit filed within six years after the crime was completed, were filed more than three years thereafter. They argued that the amendment was ex post facto legislation. In rejecting the argument, the eminent jurist, Mr. Learned Hand, had this to say:

"Perhaps they would be right, if the earlier statute had once run in their favor. . . .

"But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it."

We observe in the record that the defendants based their motions under the provisions of section 995 of the Penal Code on a third ground, that the application of the 1969 amendment to Penal Code section 194 would result in multiple prosecution and punishment as proscribed by section 654 of the Penal Code; however, these points have not been raised by any of the parties in this appeal, and we do not have the benefit of their independent research nor do we have a record before us which enables the court to dispose of the issue. Nevertheless, we discuss the principles of law generally applicable to a situation of this nature.

Section 654's preclusion of multiple prosecution is " 'separate and distinct from its preclusion of multiple punishment' "; it is a " 'procedural safeguard against harassment.' " (*Kellett* v. *Superior Court,* 63 Cal.2d 822, 825 [48 Cal.Rptr. 366, 409 P.2d 206].)

"[I]f an act or course of criminal conduct can be punished only once under section 654, either an acquittal or conviction and sentence under one penal statute will preclude subsequent prosecution in a separate proceeding under any other penal statute." (*Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 828; *People* v. *Tideman,* 57 Cal.2d 574, 587 [21 Cal.Rptr. 207, 370 P.2d 1007].) Consequently, it is necessary for prosecutors carefully to assess the seriousness of a defendant's criminal conduct before

determining what charges should be prosecuted. However, in this case, both defendants had been sentenced under the crime of inflicting cruel punishment upon Sonja Christol a year and several months before her death occurred. Defendants could not have been charged with murder at that time. The prosecution had no election to make. In a similar case involving a misdemeanor battery and felony murder, it was held that the officials were not aware of the likelihood of a death resulting from defendant's act and there was no harassment so as to constitute fundamental unfairness. (*People* v. *Breland,* 243 Cal.App.2d 644 [52 Cal.Rptr. 696]; *Kellett* v. *Superior Court, supra,* 63 Cal.2d 822.)

The issue of double punishment is premature; unless and until defendants are convicted of murder charges and sentenced there is no double punishment problem. (*In re Ward,* 64 Cal.2d 672, 676-678 [51 Cal.Rptr. 272, 414 P.2d 400].) If defendants should be convicted and it is decided by the trial court that the act for which they are convicted was the same act for which they are now being punished within section 654, the trial court may follow the procedure adopted in *People* v. *Breland, supra,* 243 Cal. App.2d 644, 652, wherein upon a defendant's conviction of second degree murder the court gave defendant credit for time served by him in jail pursuant to a sentence imposed for battery. (*People* v. *Hartfield,* 11 Cal. App.3d 1073 [90 Cal.Rptr. 274].)[3]

The judgment is reversed.

Stone, P. J., and Brown (G. A.), J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 19, 1972. Peters, J., was of the opinion that the petition should be granted.

---

[3]We do not reach a possible double jeopardy issue; we are here concerned with an order after a motion under section 995 of the Penal Code, but see 75 Yale Law Journal, 262, 291 fn. 132 (1965).