[Crim. No. 16544. First Dist., Div. One. Dec. 1, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JAMES PAYNE, Defendant and Appellant.

**COUNSEL**

Margaret Ryan Franklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, Acting P. J.**—As a result of a homicide committed January 27, 1975, the defendant was convicted of first degree murder with a finding of special circumstances which led to a sentence of death. On January 18, 1977, following the decision in *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420 [134 Cal.Rptr. 650, 556 P.2d 1101], the case was assigned to this court for disposition. On November 1, 1977, we filed our opinion (unpublished) modifying the judgment of conviction to impose a life sentence instead of the penalty of death on count one—murder, and to provide that the sentence on count two, aggravated rape, be suspended pending execution of sentence on count one, and then be permanently stayed. As so modified the judgment was affirmed.

On August 11, 1977, following the argument and submission of this case, the provisions of the Penal Code (§§ 190-190.3) relating to punishment for murder were repealed and superseded by new sections. (Stats. 1977, ch. 316, §§ 4-14, repealing the former sections and adding §§ 190-190.6.) By petition for rehearing the People assert that the case should be remanded for a hearing to determine whether the penalty should be death or life imprisonment without possibility of parole under the provisions of newly enacted section 190.3 of the Penal Code. They rely on the following humanitarian principle: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*In re Estrada* (1965) 63 Cal.2d 740, 745 [48 Cal.Rptr. 172, 408 P.2d 948] overruling at pp. 742 and 748, *People* v. *Harmon* (1960) 54 Cal.2d 9, 20-27 [4 Cal.Rptr. 161, 351 P.2d 329], and similar cases. See also *People* v. *Rossi* (1976) 18 Cal.3d 295, 298-302 [134 Cal.Rptr. 64, 555 P.2d 1313].)

They also assert that the provisions of the newly enacted legislation are merely a procedural change in the manner of determining the applicability of the death penalty which was authorized by the adoption of section 27 of article I of the state Constitution in 1972. (See *People* v. *Ward* (1958) 50 Cal.2d 702, 706-711 [328 P.2d 777, 76 A.L.R.2d 911] [cert. den. (1959) 359 U.S. 945 (3 L.Ed.2d 678, 79 S.Ct. 730), overruled on other grounds *People* v. *Morse* (1964) 60 Cal.2d 631, 649 (36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810)] [application of provisions for separate penalty trial to offense committed prior to their adoption]; and *People* v. *Snipe* (1972) 25 Cal.App.3d 742, 745-748 [102 Cal.Rptr. 6, 60 A.L.R.3d 1316] [application of law extending from one year and a day to three years and a day, the period in which manslaughter could be found when death ultimately resulted from a prior act or omission, to acts and omissions which occurred prior to, but less than one year before, the statute was amended].) A further assertion is that the change in the law is a trivial matter which can be given retroactive application. (See *People* v. *Sobiek* (1973) 30 Cal.App.3d 458, 472 [106 Cal.Rptr. 519] [cert. den. (1973) 414 U.S. 855 (38 L.Ed.2d 104, 94 S.Ct. 155)] [ruling that a partner may be guilty of grand theft].)

A final contention is found in *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371], reading: "The probable constitutional infirmity of the former law does lend some support to the conclusion that the Legislature intended the amendment to have retroactive effect. We assume that the Legislature was aware of judicial decisions [citation]; we thus assume that the Legislature knew of the dubious constitutional statute of the sexually discriminating old law. We may reasonably infer, therefore, that the Legislature wished to replace the possibly infirm law with its constitutionally unobjectionable successor as soon as possible. While this inference is hardly conclusive it is of some value in ascertaining the Legislature's intent." (16 Cal.3d at p. 588.)

We are mindful of the following rule: "The courts have on numerous occasions declared that they will not grant rehearings on points newly urged in the petition. It is the duty of counsel to see that all points are properly presented in the original briefs or argument, before submission." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 598, p. 4526. See *City of Saratoga* v. *Huff* (1972) 24 Cal.App.3d 978, 1006 [101 Cal.Rptr. 32, 102 Cal.Rptr. 376].) Nevertheless, we recognize that legislation adopted August 11, 1977, could not be appropriately called to the court's attention prior to argument and submission in July 1977. A more serious question may be posed by this court's power of review under the transfer from the Supreme Court (Cal. Const., art. VI, § 12). Section 11 of article VI of the California Constitution provides in pertinent part: "The Supreme Court has appellate jurisdiction when judgment of death has been pronounced." (See *People* v. *Shorts* (1948) 32 Cal.2d 502, 511 [197 P.2d 330].) At the time of the transfer it was apparent the death penalty was not involved. If we were to rule as requested by the People we would in effect be classifying this case as one in which the death penalty was an issue. It is arguable that in so doing we would be trespassing on the jurisdiction of the Supreme Court. Moreover, by the same token, it appears that the People are seeking a rehearing of the Supreme Court's order of transfer to this court, which impliedly held the penalty imposed on the defendant as unconstitutional. Since the Supreme Court may acquire jurisdiction upon petition for hearing, discretion dictates that we leave respondent to that remedy.

Lest the Supreme Court remand the matter for the sake of securing a further exposition of the merits of the question, we also add that in our opinion the People's arguments are fallacious, sophistical, and specious, and will not bear the light of analysis. They concede that constitutional principles preclude retroactive application of a statute as

an ex post facto law. "A statute has an ex post facto effect when it alters the situation of an accused to his disadvantage by: (a) making criminal an action innocent when done; (b) making more serious an act already criminal when done; (c) inflicting greater punishment than that attending the act at the time it was committed; or (d) permitting a person to be convicted with less evidence than was required when the act was done." (*People* v. *Sobiek, supra,* 30 Cal.App.3d 458, 472.)

Here the new statute demonstrably inflicts greater punishment than could be inflicted under the former statute at the time the act was committed. The People's argument is predicated on the theory that the statutes which provided for the death penalty in 1975 were valid. Such is not the case. (*Rockwell* v. *Superior Court, supra,* 18 Cal.3d 420.) At the time of the adoption of the new statute the penalty for murder, aggravated as in this case, was not that nominally provided by the Legislature, but life imprisonment. The new statute did not purport to amend or patch up the old law; it adopted a new scheme of punishment under the new, not the old, law. The defendant here may be punished under the old law by virtue of the provisions of section 9608 of the Government Code. (*In re Estrada, supra,* 63 Cal.2d 740, 747-748.) Nevertheless, in proceeding under that law the prosecution is subject to all its constitutional infirmities. To impose a greater punishment would offend, not only the principles of section 3 of the Penal Code, but those delineated in *In re Estrada.*

As we have noted the procedural changes expressly relate to the new law not the former law which has been repealed. Therefore cases dealing with procedural changes are not pertinent. The change from life imprisonment to possibility of death is not trivial. Nor can we say that the Legislature by repealing all the old law intended to rectify its constitutional infirmities as in *In re. Marriage of Bouquet.* Moreover, in that case the court was able to justify the alleged divestiture of rights on grounds not available here.

■ We do not find comfort for the People in *Dobbert* v. *Florida* (1977) 432 U.S. 282 [53 L.Ed.2d 344; 97 S.Ct. 2290]. The "fair warning" doctrine adopted by the majority of the court (432 U.S. at p. 297-298 [53 L.Ed.2d at pp. 358-359; and 97 S.Ct. at p. 2300]) is, as demonstrated in the dissenting opinion of Justice Stevens, an absurdity. If applied generally it would mean that whenever a criminal statute were declared unconstitutional it could be patched up and the offender ultimately punished. Nor can we accede to the proposition that a remand for trial of

the penalty issue would not deny the defendant equal protection of the laws. (See 432 U.S. 282, 301 [53 L.Ed.2d 344, 361; 97 S.Ct. 2290, 2302].) Defendant is one of a class who committed a homicide before August 11, 1977, and since January 1, 1974, the effective date of the provisions under which he was convicted. (Stats. 1973, ch. 719, §§ 2, 4, 5 and 6, pp. 1297-1300.) We do not know whether any sentences were finally commuted to life imprisonment before August 11, 1977. Nevertheless, it may safely be stated that those of the class who were charged with murder after December 7, 1976, and before August 11, 1977, were not subjected to a prosecution under which they would suffer death under the prior law, and that those who had been convicted and not sentenced prior to December 7, 1976, were not sentenced to suffer death. (See *Rockwell* v. *Superior Court, supra,* 18 Cal.3d 420, 445.) Any attempt to apply the new law to those who have been tried and sentenced under the old law cannot be uniform, and will fall, not on a logically and readily identifiable class, but according to the vagaries of when the crime was committed and the varying delays in apprehending and convicting the accused. Such an application of the law would deny equal protection.

In any event it cannot be applied to one such as the defendant who was tried and sentenced under the former law. The state provides an automatic appeal, but to condition that review on an opportunity to pass new legislation which would impose a new trial and a more severe penalty than could have been imposed at the time of the original judgment would place the defendant in double jeopardy in violation of the law of this state. "A defendant's right of appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life to invoke that right." (*People* v. *Henderson* (1963) 60 Cal.2d 482, 497 [35 Cal.Rptr. 77, 386 P.2d 677]. See also *People* v. *Hood* (1969) 1 Cal.3d 444, 459 [82 Cal.Rptr. 618, 462 P.2d 370]; *In re Ferguson* (1965) 233 Cal.App.2d 79, 81-82 [43 Cal.Rptr. 325]; and *North Carolina* v. *Pearce* (1969) 395 U.S. 711, 719-726 [23 L.Ed.2d 656, 665-670, 89 S.Ct. 2072]. Cf. *Chaffin* v. *Stynchcombe* (1973) 412 U.S. 17, 35 [36 L.Ed.2d 714, 728, 93 S.Ct. 1977]; and *Stroud* v. *United States* (1919) 251 U.S. 15, 18 [64 L.Ed. 103, 110, 40 S.Ct. 50]. Note, *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 601 [119 Cal.Rptr. 302, 531 P.2d 1086], recognizing that California will apply its own standard of double jeopardy.) It is true that the defendant at his first trial was ostensibly in jeopardy of suffering the death penalty, and outwardly it would not be subjecting him to a greater penalty to retry the issue of his punishment under more favorable circumstances. The fact remains, however, that it was unconstitutional to require him to stand trial for his life, and it was so determined by the

Supreme Court of this state on December 7, 1976, while his appeal was pending. (*Rockwell* v. *Superior Court, supra,* 18 Cal.3d 420, 445.) It was manifested in defendant's case by the transfer of the case to this court on January 18, 1977, after that decision became final. Had he then sought a remission of penalty and waived his right to attack the judgment on the merits, he would have had a final judgment long prior to the adoption of the new law in August 1977. On that record it cannot be said that the principles set forth above are not applicable.

In opposition to the petition for rehearing, the defendant claims that any attempt to apply the death penalty at this state of the proceedings would constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution. He argues that to withdraw the amnesty, granted by recognition of the unconstitutional nature of the law under which he was convicted, would constitute an intentional infliction of mental distress proscribed by that amendment. While not disagreeing with that contention, we believe it is unnecessary to pursue it further in the light of the analysis set forth above.

The People's petition for rehearing is denied.

Elkington, J., and Lazarus, J.,* concurred.

Appellant's petition for a rehearing was denied December 1, 1977, and the petitions of both parties for a hearing by the Supreme Court were denied January 19, 1978.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.