## Commonwealth v. Evaul.

*Homicide — Involuntary manslaughter—"Year and a day rule"—Indict-ment.*

1. An indictment for involuntary manslaughter by the negligent operation of an automobile will be sustained, although it discloses that death occurred more than a year and a day after the accident.

2. The "year and a day rule" applies to murder and voluntary manslaughter, which are felonies, but not to involuntary manslaughter, which is only a misdemeanor.

Motion to quash indictment. Q. S. Phila. Co., Nov. Sess., 1922, No. 771.

*Lemuel B. Schofield,* Assistant District Attorney, for Commonwealth.

*Allen Spangler, for* defendant.

GORDON, JR., J., Sept. 10, 1924.—This is a motion to quash a bill of indict-ment. Joel Evaul, the defendant, is charged with involuntary manslaughter in causing the death of James K. Diehl by the negligent operation of an auto-mobile. The indictment sets forth that the accident in which the fatal injuries were received happened on Oct. 28, 1921, and that Diehl died as a result of the injuries on Oct. 30, 1922, one year and two days after they were inflicted. The defendant invokes the "year and a day rule," and contends that the indictment is defective on its face, as it discloses that death occurred more than a year and a day after the receipt of the fatal injuries.

This raises the single question whether the rule that to constitute the crime of murder death must occur within 366 days of the receipt of the fatal stroke is applicable to all forms of homicide, including involuntary manslaughter. To determine this question we must consider briefly the origin and nature of the rule. It would seem that the more modern text-book writers upon the subject assume the rule to have been applied generally at common law to all forms of unlawful homicide. Wharton, in his work on Homicide (3rd ed.), chap. 111, § 18, page 19, says, in his discussion of homicide in general, that: "By the English common law, the death must have occurred within a year and a day from the date of the injury received." So, also, Clark, in his "Criminal Law" (3rd ed.), page 17, says: "The death must have resulted within a year and a day after the blow is given, or other act done which is alleged as the cause of death; otherwise, the law conclusively presumes that death resulted from some other cause." To the same effect are: Bishop's "New Commen-taries on the Criminal Law" (8th ed.), vol. 2, page 641; "A Treatise on the Law of Homicide," published at Charlottesville, Va., in 1914; 29 Corpus Juris, § 1083; Russell's "Law of Crimes" (1910), Book 4, chap. 1, part 1, § 5, page 690 (7th ed.); Edward East's "Treatise of the Pleas of the Crown," published in 1803, in the part devoted to the requisites of an indictment.

This assumption of the general applicability of the rule to all forms of homicide is not altogether borne out by the authorities cited to support it. There can be no doubt that, at common law, the rule was formulated and consistently applied to felonious homicide: 4 Black., 197; 1 Hawk., P. C., 79; but a careful reading of the ancient cases and commentators shows that it was applied only to murder and the graver forms of manslaughter, and has never been unequivocally applied to the misdemeanor of involuntary manslaughter. Sir Edward Coke discusses the rule in connection with murder (Institutes, chap. 7, page 47), and the only reference made to it by Blackstone is in the 14th chapter of the 4th book, where he treats of "wilful and deliberate mur-der" after he has already disposed of voluntary and involuntary manslaugh-ter. Hawkins, who is cited by Blackstone as authority for the rule, makes

no mention of it in chapter 12 of Book 1 of the Pleas of the Crown, which is devoted to the discussion of manslaughter, though it is referred to in chapter 13, section 9, page 93, where murder is discussed. Hawkins's authorities for the rule are three in number: A treatise on the common law, entitled "De Pace Regis et Regni," by Ferdinando Pulton, of Lincolnes Inne (1615); "The Country Justice," by Michael Dalton (1620), and "Les Ples del Coron" of William Staundiforde (1574). The first of these authorities also states the rule after disposing of manslaughter, and in connection with the description of different forms of murder: Section 40, page 123. The second authority deals with murder before manslaughter, and in the former connection announces the rule, though he intimates that it applies to murder "or other homicide:" 1st ed., chap. 93, page 241. This, however, could not include the misdemeanor of involuntary manslaughter, which developed later in the law and was made a distinct and independent offence in Pennsylvania by section 79 (Act of March 31, 1860, P. L. 403) of the Criminal Code of 1860. The third authority cited by Hawkins is much earlier than the other two. It is written in Norman-French, and, though it would seem to apply the rule generally to homicide, it is chiefly valuable to attest the ancient and dignified character of the rule in question.

From these authorities, which are the original sources of the year and a day rule, together with the singular fact that there appears to be no single reported case in which it has been applied to the misdemeanor of involuntary manslaughter, we find no compulsion to so apply it. Indeed, notwithstanding that its origin is obscured in antiquity, its nature and purpose is so obvious and so well understood that we would hesitate long to-day before defeating substantial justice by extending its application. One of the earliest recorded application of the rule seems to have been in Heydon's case (Coke's Reports, Part IV, 41), where it was held that the stroke was not the time from which the rule was reckoned, but the death. At this time there seems to have been some confusion as to the nature of the rule, whether it was one of evidence, to determine the cause of death, or of pleading, as a limitation upon the time of indictment. Coke discusses this question and seems to count the time from the death, as does Sir Matthew Hale in his "History of the Pleas of the Crown," published in 1736. It was finally settled, however, that the time runs from the stroke, and the reason for the rule is stated by Coke to be "if he die after that time it cannot be discerned, as the law presumes, whether he died of the stroke or poison, etc., or a natural death; and in case of life, the rule of law ought to be certain:" Coke's 3rd Inst., F 53. Thus the rule is seen to be in substance one of evidence which grew out of the limitations and uncertainties of the medical knowledge of ancient times, and which, because of its absolute nature as a conclusive and irrefutable presumption, is also a rule of pleadings in indictments. It is not based upon reason; for it would be folly to contend that the causal connection between the stroke and the death can be safely proved within 366 days, but cannot on the 367th. It is a rule of convenience, arbitrary but necessary, and designed to mitigate the rigor of the old law which exacted a life for murder and manslaughter indiscriminately.

This being the nature and purpose of the rule, we might well ask why it should in any case be applied in modern times, when the necessity and reason for it have disappeared with the marvelous advance of medical knowledge and skill. However, this is a matter properly for legislation as to cases of felonious homicide. But why should it be extended to an offence to which it has never heretofore been applied? *Cessante ratione legis cessat ipsa lex:*

Broom's Legal Maxims, 8th ed., 129. The reason for the law, happily, has been removed, and in cases of the misdemeanor of involuntary homicide at least, it is now proper to discard a useless and unscientific rule. The rules of evidence and the doctrine of reasonable doubt protect the accused and assure him of his freedom on the failure of full and adequate proof of his responsibility for the death which followed many months after the accident. More than this he cannot justly ask, and his attempt to escape responsibility by invoking an ancient doctrine never applied before to the misdemeanor of which he is indicted cannot be looked upon with favor.

The motion to quash the indictment is, therefore, overruled.