**STATE**

v.

**Arthur PINE.**

**No. 86–200–C.A.**

Supreme Court of Rhode Island.

April 24, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

SHEA, Justice.

This case is before the Supreme Court on appeal by the State of Rhode Island following the grant by the Superior Court of the defendant's pretrial motion to dismiss an indictment for manslaughter. The trial justice dismissed the indictment because the victim died more than a year and a day after the defendant allegedly assaulted him. He held that the common-law year-and-a-day rule was no longer viable but declined to give its abrogation retroactive effect. We affirm.

On July 27, 1982, defendant is alleged to have punched the victim, Vincent Thomas, on the jaw. Thomas fell backward, hit his head on the curb, and was knocked unconscious. On December 29, 1984, two years and five months after the assault, during which time the victim underwent several hospitalizations and extensive medical treatment, he died. The medical examiner concluded that Thomas's manner of death was "homicide" and causally related his death to the July 27, 1982 assault by defendant.

In response to defendant's motion to dismiss, the trial justice held that the year-and-a-day rule established a conclusive presumption that when death occurs more than a year and a day after the criminal act, the death was due to natural causes rather than a result of the criminal act. He found the rule to have been in force in this jurisdiction as part of the common law because there had never been any judicial or legislative pronouncement to the contrary. He found also that the presumption on which the rule stands arose as a result of the primitive state of medieval medical knowledge and the difficulties involved in determining the cause of death after a certain amount of time has elapsed. He concluded that due to the current state of medical knowledge, much improved from medieval times, the necessity for the rule no longer exists and the rule should be abrogated. Owing to concerns of fundamental fairness and due process, however, the trial justice abrogated the rule prospectively, thereby allowing its application to this defendant's case. He then dismissed the indictment, and the state appealed.

The history of the common-law year-and-a-day rule is long but not altogether clear. The statutes made at Glocester on October 4, 1278, held that a suit for murder "shall not be abated for default of fresh suit, if the party shall sue within the year and the day after the deed done." A number of opinions and learned treatises have credited the Statute of Glocester with the beginnings of the common-law year-and-a-day rule. *See, e.g., State v. Sandridge,* 5 Ohio Op. 3d 419, 419, 365 N.E.2d 898, 898 (1977); *Commonwealth v. Ladd,* 402 Pa. 164, 167, 166 A.2d 501, 504 (1960); *Elliott v. Mills,* 335 P.2d 1104, 1107 (Okla.Crim. App.1959). The Statute of Glocester was specifically adopted as part of this state's common law by the Rhode Island General Assembly during its February 1750 session, when it accepted the recommendation of the Updike Committee. E. Flynn, *Judicial History of Rhode Island,* 1 R.I. Digest XIII, XVII (West 1950). This statute, as originally adopted in 1278, appears to have provided a statute of limitations on the private form of murder prosecution, called an "appeal," measured from the date of the victim's death. *Commonwealth v. Lewis,* 381 Mass. 411, 413, 409 N.E.2d 771, 772 (1980), *cert. denied,* 450 U.S. 929, 101 S.Ct. 1386, 67 L.Ed.2d 360 (1981). The year-and-a-day rule that concerns us today is measured from the date of the assault rather than from the date of death. The latter

rule, as part of the common law definition of murder, holds that "[i]n order also to make killing murder, it is requisite that the party die within a year and a day after the stroke received, or cause of death administered * * *." 4 W. Blackstone Commentaries, *197. This may be distinguished from the year-and-a-day statute of limitations placed on homicide appeals. The "appeal," along with its year-and-a-day limitation on suit, became obsolete, however, long before it was formally extinguished in England in 1819, leaving only crown prosecutions for homicide. Those crown prosecutions were the precursor of today's murder trials, which carry no statute of limitations on the time allowed for prosecution. *See Commonwealth v. Lewis*, 381 Mass. at 413, 409 N.E.2d at 772.

Although it is unclear when the year-and-a-day requirement in homicide prosecutions concerning the death of the victim first arose, it has been referred to and defined in numerous works compiling and explaining the state of English common law. Indeed, by the early eighteenth century and probably much earlier, there was a general assumption that a homicide could be prosecuted as such only if the victim died within a year and a day of the wrongful act. 381 Mass. at 413–14, 409 N.E.2d at 772–73. Both Sir Matthew Hale and William Hawkins refer to the rule in their treatises on the common law:

> "If a man give another a stroke, which it may be, is not in itself so mortal, but that with good care he might be cured, yet if he die of this wound within the year and a day, it is homicide or murder, as the case is, and so it hath been always ruled." 1 Hale, History of the Pleas of the Crown, ch. 33 at 428 (1736).

> "Also it is agreed, that no person shall be adjudged by any act whatever to kill another who doth not die thereof within a year and a day after; in the computation whereof, the whole day in which the hurt was done shall be reckoned the first." *Elliott v. Mills*, 335 P.2d at 1107 (quoting 1 Hawkins's Pleas of the Crown, ch. 13, § 9 (8th ed. 1824)).

█ Since compilation of the criminal law in the early law reports was not so adequate as the compilation of the civil law, Hale's History of the Pleas of the Crown (1736) together with Hawkins's Pleas of the Crown (1716) are said to form the basis of the modern criminal law. H. Potter, An Historical Introduction to English Law, 249 (2d ed. 1943). It is clear, therefore, that the year-and-a-day rule was well known to be part of the common law of England prior to the adoption of the Rhode Island State Constitution in 1842. Article 14, section 1, of our State Constitution holds that "[a]ll charters, contracts, judgments, actions and rights of action shall be as valid as if this Constitution had not been made." We conclude, therefore, that the common-law year-and-a-day rule was in effect and hence accepted by our State Legislature as part of our jurisprudence, both before and after the enactment of our constitution in 1842, as being part of the body of common law that had not been specifically abrogated by the writers of the constitution.

The United States Supreme Court has held that common-law murder undoubtedly included the year-and-a-day rule and that "such is the rule in this country in prosecutions for murder, except in jurisdictions where it may be otherwise prescribed by statute." *Louisville, Evansville, & St. Louis, R.R. Co. v. Clarke*, 152 U.S. 230, 239, 14 S.Ct. 579, 581, 38 L.Ed. 422, 424 (1894). A majority of states have accepted the fact that the common-law rule has been incorporated into their criminal law. *See, e.g., People v. Stevenson*, 416 Mich. 383, 386, 331 N.W.2d 143, 143 (1982); *State v. Young*, 77 N.J. 245, 248, 390 A.2d 556, 557 (1978); *Elliott v. Mills*, 335 P.2d at 1109 (citing numerous decisions from various states).

Although this court has generally incorporated the common law of England into our body of law, we have never specifically had the opportunity to address the applicability of the year-and-a-day rule. This court held in *Traugott v. Petit*, 122 R.I. 60, 63, 404 A.2d 77, 79 (1979), that absent the express intent of the Legislature, a statutory enactment does not abrogate or super-

sede the common laws. Also, in *Benevides v. Kelly*, 90 R.I. 310, 316, 157 A.2d 821, 824 (1960), we held that our policy is to follow common law except as modified by statute.

Our State Legislature statutorily addressed the crime of murder in 1915 when it separated the offense into degrees and provided various punishments for those degrees. *See* P.L.1915, ch. 1258, § 6. This codification, however, did not change the elements of the crime of murder from those that existed at common law. *State v. Hathaway*, 52 R.I. 492, 501–02, 161 A. 366, 369 (1932). Furthermore, the definition of manslaughter remains as it was at common law. *State v. Vargas*, 420 A.2d 809, 815 (R.I.1980) (citing *State v. Fenik*, 45 R.I. 309, 121 A. 218 (1923)).

■ Having concluded that the year-and-a-day rule remained part of the law of the state in the absence of its specific abrogation, we must now decide whether the rule remains viable in light of the state of modern medical and forensic science and the structure of procedural protections afforded criminal defendants by various statutes, case law and rules of practice and procedure. Medical science has advanced to the point where some lives that in the past would have ended almost immediately can now be sustained or prolonged indefinitely. The reason advanced for the rule at common law was that if the person alleged to have been murdered dies after the expiration of a year and a day, "it cannot be discerned, as the law presumes, whether he died of the stroke, or poison, etc., or a natural death." *Elliott v. Mills*, 335 P.2d at 1108 (citing 1 Warren on Homicide § 60 (1938)). Modern pathologists are able to determine the cause of death with much more accuracy than was possible in earlier times. The causation question therefore presents a far less difficult problem of proof in modern-day criminal prosecutions.

It is true that when the period between the assault and the victim's death is prolonged, problems of proof can be made more difficult. This greater difficulty affects the ability of the state to prove its case and consequently can be said to afford additional protection to the criminal defend-

ant. Since the state must establish the connection between the act and the victim's death beyond a reasonable doubt, any problems of proof serve to benefit the defendant. "A murder conviction which rests upon uncertain medical speculation as to the cause of death is not a case which has been proved beyond a reasonable doubt." *People v. Stevenson*, 416 Mich. at 392–93, 331 N.W.2d at 146. We think this standard is a sufficient safeguard for the criminal defendant. We do not find, therefore, that our abrogation of the year-and-a-day rule requires us to replace it with some other time period within which death must occur.

Our review demonstrates that a majority of jurisdictions retain the common-law year-and-a-day rule. However, we adopt the conclusion of the Supreme Judicial Court of Massachusetts that the long life of the rule may result from the infrequency with which the issue has been raised. Courts therefore have not been given the opportunity to address it. *Commonwealth v. Lewis*, 381 Mass. at 415, 409 N.E.2d at 773. That is exactly the case in this state.

Some courts have declined to abrogate the rule, holding that the legislature is the proper forum for such change. *State v. Minster*, 302 Md. 240, 241, 486 A.2d 1197, 1197 (1985). We conclude that since murder is a common-law crime and the application of the year-and-a-day rule in criminal prosecutions was originally judicial and not the act of the legislature, it is entirely appropriate for this court to make the change. *See Becker v. Beaudoin*, 106 R.I. 562, 569, 261 A.2d 896, 900 (1970) (*citing Rampone v. Wanskuck Buildings, Inc.*, 102 R.I. 30, 227 A.2d 586 (1967)). "While a deferral to the legislature in the initiation of changes in matters affecting public policy may often be appropriate, it is not required where the concept demanding change is judicial in its origins." 106 R.I. at 570, 261 A.2d at 900 (quoting *Henry v. John W. Eshelman & Sons*, 99 R.I. 518, 527, 209 A.2d 46, 51 (1965)). The Legislature may wish to comment statutorily on the rule at some future time, and it is certainly not precluded from doing so. Nevertheless, that possibility does not ren-

**1108**

der inappropriate our decision to affect the common law through judicial decision.

 The abrogation of the common-law year-and-a-day rule in this state immediately raises the question of whether its abolition will apply retroactively to this defendant. We hold that it does not. The rule has been variously characterized both as evidentiary or procedural on the one hand and as substantive law on the other. *Compare, People v. Snipe*, 25 Cal.App.3d 742, 747, 102 Cal.Rptr. 6, 9 (1972) (legislative abrogation of year-and-a-day rule is procedural change merely modifying common-law impediment); *State v. Sandridge*, 5 Ohio Op.3d at 420, 365 N.E.2d at 899 (rule nothing more than arbitrary settlement of problem of proof); *Commonwealth v. Ladd*, 402 Pa. at 172, 166 A.2d at 507 (rule not considered part of substantive definition of crime); *with State v. Young*, 77 N.J. at 252, 390 A.2d at 559 (rule is constituent element of crime, not mere rule of evidence). We reject those decisions that turn on whether the rule is "substantive," "evidentiary," or "procedural." We adopt instead those decisions that resolve the question on the importance of the right concerned and its effect on defendant as well as the desirability of uniform application of the law: *See Commonwealth v. Lewis*, 381 Mass. at 418, 409 N.E.2d at 775; *People v. Stevenson*, 416 Mich. at 396, 331 N.W.2d at 148.

The United States Supreme Court has defined an ex post facto law as one " 'that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action' " or " '*aggravates* a *crime*, or makes it *greater* than it was, when committed' " and has forbidden its retroactive application. (Emphasis in original.) *Bouie v. Columbia*, 378 U.S. 347, 353, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894, 899–900 (1964). Although the ex post facto prohibition applies to legislation only, it has been held that the due-process clause prevents the accomplishment by judicial construction of that which is not permitted by statute. *See Marks v. United States*, 430 U.S. 188, 191–92, 97 S.Ct. 990, 992, 51 L.Ed.2d 260, 265 (1977) (ex post facto provisions applicable to judiciary through due-process clause of Fifth Amendment to United States Constitution); *Bouie v. Columbia*, 378 U.S. at 353, 84 S.Ct. at 1702, 12 L.Ed.2d at 900 (provision also applicable through Fourteenth Amendment). On July 27, 1982, the defendant was allegedly guilty of an assault and battery. Applying the common-law rule, if the victim had died on or before July 28, 1983, the defendant may also have been guilty of some degree of murder. At common law if the victim did not die within a year and a day, a murder could not have been committed. Retroactive application of our abrogation of the year-and-a-day rule, therefore, would "aggravate" the crime of assault and battery, making it greater than it was when committed or greater than it could have been before the expiration of a year and a day.

For the above-stated reasons the state's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.