518 So.2d 295 (1987)
Sheldon JONES, Petitioner,
v.
Richard L. DUGGER, Secretary, Department of Corrections, Respondent.
No. 87-1085.
District Court of Appeal of Florida, Second District.
November 6, 1987.
*296 Sheldon Jones, pro se.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for respondent.
PER CURIAM.
In this habeas corpus proceeding Sheldon Jones maintains that he received ineffective assistance of counsel in his appeal from an attempted murder conviction. We deny the petition.
In July 1984, Jones shot Bernard Gonyea, a coworker at the Tampa office of the Department of Housing and Urban Development. Gonyea remained in a coma and never recovered. Ten months after the shooting a jury rejected Jones's defense of insanity and convicted him of attempted first degree murder. Jones was sentenced to twenty-five years in prison and filed a timely notice of appeal. While the appeal was pending Gonyea expired from the wounds inflicted some two years before by Jones. According to the petition, appellate counsel wrote Jones and advised him to dismiss his appeal. In exchange for the dismissal the state would agree not to seek an indictment for first degree murder. Jones was hesitant because, in his opinion, the common law "year and a day rule" would bar the potential murder prosecution. However, when counsel advised Jones the "year and a day" argument was "far from a sure thing," Jones authorized a voluntary dismissal. He now repudiates counsel's advice and seeks to have the appeal reinstated.
We find that Jones's petition is facially insufficient because it wholly fails to satisfy the two-pronged test for proof of ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which has been applied by our supreme court to appellate as well as trial counsel. Johnson v. Wainwright, 463 So.2d 207 (Fla. 1985). Specifically, while Jones does pinpoint the specific act by counsel which he claims constitutes deficient representation, the recommendation that Jones dismiss the appeal, he does not offer any showing that the outcome of the case would have been different had he not heeded counsel's advice and instead persisted with the appeal. The entire petition is devoted to advancing Jones's belief that the "year and a day" rule would have barred his reprosecution for murder, that is, that counsel was simply mistaken about the law. He does not allege what issues were properly preserved for appellate review, let alone whether there was any probability such issues could have been successfully advanced, and thus even if his analysis of the effect of the common law rule is correct his petition must fail.
In so holding we do not overlook Rodriguez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), and Baggett v. Wainwright, 229 So.2d 239 (Fla. 1969). These cases dealt with prisoners whose desire to appeal a conviction had been frustrated ab initio by state action. In neither case did the petitioners offer any indication that an appeal would have resulted *297 in any practical benefit to them. Nevertheless the courts rejected the respondents' suggestion that such a showing should be required before relief would be granted, noting the petitioners' lack of any legal education which would equip them to prejudge the sufficiency of their cases. The present case does not pose an equivalent danger to the ability of an indigent, unsophisticated prisoner to obtain review of his conviction. Here the petitioner was at all times represented by an attorney who, during the course of that representation, made a strategic decision based on the information available to him and his interpretation of the law. Presumably, when he made his predictions about the outcome of the appeal he took into account the issues that had been preserved for appeal and the relative merit of those issues. Of course, the ethical obligations of appellate counsel require that he do more than summarily and unilaterally dismiss an appeal with which he has become disenchanted. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). However, the final decision to abandon the appeal in this case was left to Jones. We find nothing in Rodriguez or Baggett that bars us from requiring that he show some prejudice from counsel's advice above and beyond its immediate effect upon the appeal running its course.
We write in this case primarily to express our belief that the "year and a day" rule has, in this age of advancing medical technology, lost any relevance that it once might have enjoyed, and thus should be abolished. At common law, if more than a year and a day elapsed between the infliction of an injury and the death of the party injured, that injury was conclusively presumed not to be the cause of death. Howard v. State, 24 Ala.App. 512, 137 So. 532, cert. denied, 223 Ala. 529, 137 So. 535 (1931); State v. Moore, 196 La. 617, 199 So. 661 (1940); Cole v. State, 512 S.W.2d 598 (Tenn. Crim. App. 1974). In Florida the common law of England is in full force with respect to crimes (except for modes and degrees of punishment) "where there is no existing provision by statute on the subject." § 775.01, Fla. Stat. (1985). Even so, the state maintains that "it is doubtful whether this doctrine prevails in Florida today" and therefore that the "conservative tactic" suggested by appellate counsel cannot be said to fall outside "the wide range of reasonable professional conduct" that qualifies as effective assistance.
The rule has been attributed to "the inexactitude which characterized the medical community's ability to determine cause of death" in the era during which the common law evolved. Swafford v. State, 421 N.E.2d 596, 600 (Ind. 1981). See also, State v. Brown, 21 Md. App. 91, 318 A.2d 257 (1974). Not surprisingly, the courts have come to view the rule as "clearly an anachronism" and "no longer realistic." State v. Sandridge, 365 N.E.2d 898, 899 (Oh.Com.Pl. 1977). Historically, the more common viewpoint seems to be that abrogation of the rule must be accomplished, if at all, by the legislative branch. See, e.g., State v. Dailey, 191 Ind. 678, 134 N.E. 481 (1922); State v. Zerban, 617 S.W.2d 458 (Mo. App. 1981). Among the jurisdictions where this has been done is New York. People v. Brengard, 265 N.Y. 100, 191 N.E. 850 (1934).[1] However, at least one court has taken judicial notice of scientific advancements since 1776 and has concluded that because "[a] rule becomes dry when its supporting reason evaporates" no further purpose is served by adhering to such an outmoded concept. Commonwealth v. Ladd, 402 Pa. 164, 166 A.2d 501, 506 (1960).
In Ladd the court, in a jurisdiction with no statutory definition of murder, looked to the definition given by Blackstone, who, they found, "waits for two pages" in his commentaries before mentioning the year and a day rule. 166 A.2d at 505. "The rule cannot, therefore, be said to be part of the definition of murder, either in Blackstone *298 or in Pennsylvania. Nor do we see any reason in principle for reading Blackstone's addendum into the body of his definition." 166 A.2d at 505-6.[2] Similarly, in Head v. State, 68 Ga. App. 759, 24 S.E.2d 145 (1943), the court, though deferring the task of abrogating the rule to the legislature, considered the rule to be one of evidence rather than part of the definition of the common law crime of murder.
There is little case law from our state addressing this rather arcane issue. It has been held that an indictment for murder which did not specifically allege the decedent died within a year and a day of the fatal injury was not fatally defective, but had to be attacked prior to judgment. Smith v. State, 73 Fla. 449, 73 So. 354 (1916). Nor was an indictment fatally defective despite this omission where the alleged date of the offense was within one year of the trial. Smith; Rogers v. State, 73 Fla. 42, 74 So. 15 (1917). However, we are unable to find any judicial precedent from this state clearly stating that the rule has been or should be abolished.
We agree with the analysis employed by the courts in Head and Ladd and find that the "year and a day" rule is a rule of evidence rather than an element of the offense of murder. We think the rule is no longer viable in our jurisprudence because when the reason for any rule of law ceases the rule should be discarded. Randolph v. Randolph, 146 Fla. 491, 1 So.2d 480 (1941). While Jones's counsel did not have the benefit of our view on the subject when advising his client, we think he certainly was justified in his skepticism regarding the potential benefit of the rule to Jones.
Petition denied.
SCHEB, A.C.J., and SCHOONOVER and HALL, JJ., concur.
NOTES
[1] The precise holding in Brengard is that since the definition of murder found in the New York statutes omits any mention of the "year and a day" rule it may be presumed that the legislature intended to abandon the rule. Earlier statutes regarding various types of homicide had prescribed time limits with respect to causation. See also Commonwealth v. Lewis, 381 Mass. 411, 409 N.E.2d 771 (1980), cert. denied sub. nom. Phillips v. Massachusetts, 450 U.S. 929, 101 S.Ct. 1386, 67 L.Ed.2d 360 (1981).
[2] The conclusion reached in Ladd, to the extent it applied retroactively against the appellant, was rejected by State v. Young, 77 N.J. 245, 390 A.2d 556 (1978), which held that the "year and a day" rule acts to "substantively immunize the assaulter from liability for murder after lapse of the specified time." 390 A.2d at 559. However, the court in Young found that it did have the power to abrogate the rule prospectively.