COMMONWEALTH *vs.* RAUL CASANOVA.

Suffolk. March 1, 1999. - April 7, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Homicide. Death. Due Process of Law,* Delay in commencement of prosecution.

This court declined to adopt a rule (to replace the year and a day rule abolished by the holding in *Commonwealth* v. *Lewis*, 381 Mass. 411, 414-415 [1980]) providing a specific interval of time after injury beyond which a defendant cannot be held legally responsible for causing a death. [297-299]

INDICTMENT found and returned in the Superior Court Department on May 14, 1998.

A motion to dismiss was heard by *Isaac Borenstein,* J., and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted an application for direct appellate review.

*Michael C. Bourbeau* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

*David Skeels,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

*Gerard D. Downing,* District Attorney, *& Nicholas B. Kosiavelon,* Assistant District Attorney, for the Commonwealth, amicus curiae, submitted a brief.

FRIED, J. The defendant, Raul Casanova, stands indicted on the charge of murder in the first degree. Having denied the defendant's motion to dismiss the charge, a Superior Court judge reported the following questions to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979):

"(1) Should Massachusetts judicially adopt a rule on the element of causation which replaces the year and a day rule?

"(2) If the answer to question one is yes, should the rule

provide for a specific interval of time between the act causing injury and death after which a conclusive presumption arises that the cause of the killing was not criminal?

"(3) If the answer to question two is yes, does the five year interval in this case exceed that time period?"

We granted the defendant's application for direct appellate review of the reported questions. We affirm the denial of the motion to dismiss and decline to adopt a rule providing a specific interval of time after injury beyond which a defendant cannot be held legally responsible for causing a death.

I

On January 11, 1991, outside a building in Boston, several shots were fired at the victim from a distance of less than ten feet. One of the bullets hit him in the neck, rendering him paralyzed from the neck down. His ability to breathe was also compromised because the bullet severed the neurological connections to the muscles in his rib cage and partially severed the connections to his diaphragm.

A grand jury returned indictments charging the defendant with armed assault with intent to murder, assault and battery by means of a dangerous weapon, and unlawful carrying of a firearm. After a trial in the summer of 1991, a jury convicted the defendant of all three crimes.

The victim lived six years after the shooting, but remained confined to a wheelchair. For a time, he regained the ability to breathe on his own for short periods. By early 1996, however, his condition had deteriorated to the point that he could no longer breathe without a ventilator. In November, 1996, he developed adult respiratory distress syndrome (ARDS), an illness associated with chronic ventilation. He died from ARDS on November 23, 1996. Approximately eighteen months after his death, a grand jury indicted the defendant for the victim's murder.

The defendant filed a motion to dismiss the indictment on the grounds that the indictment violated his right to due process and his right to a speedy trial under both State and Federal law and because the complaint lacked proper basis in law. In the alternative, the defendant requested that the judge certify questions pursuant to rule 34. The Superior Court judge denied the defendant's motion to dismiss. He held that the defendant was

not deprived of his right to a speedy trial. In the absence of prejudicial delay or oppressive or culpable actions on the part of the government, the guaranty of a speedy trial, the judge explained, does not attach until an indictment is returned. The judge found neither wrongful conduct on the part of the government nor prejudice to the defendant. The judge also held that the defendant's claim that the prosecution misled the grand jury into believing that "but for" causation was sufficient to sustain a murder charge was without merit. As to the defendant's claim that the current prosecution, coming so long after the injury and following an assault conviction based on the same act, was a denial of due process, the judge held that he could not substitute a conclusive presumption against causation for the reasonable doubt standard but was sufficiently concerned that he certified to the Appeals Court the question whether a determinate limitation on causation should be adopted to replace the year and a day rule.

## II

At common law, a defendant could not be prosecuted for murder unless his victim died within a year and a day of the act inflicting injury. See *Commonwealth* v. *Lewis*, 381 Mass. 411, 413-414 (1980), cert. denied sub nom. *Phillips* v. *Massachusetts*, 450 U.S. 929 (1981); 4 W. Blackstone, Commentaries *197-198, *310-311; 4 H. Broom, Commentaries on the Laws of England 235-236 (1869) ("no person shall be adjudged by any act whatever to have killed another, if that other does not die within a year and a day after the stroke received, or cause of death administered"). Otherwise, the loss of life would be attributed to natural causes rather than the distant act inflicting injury. R.M. Perkins & R.N. Boyce, Criminal Law 46 (3d ed. 1982). This requirement envisioned that the death must be shown to be "sufficiently connected with the act." 3 W. Holdsworth, A History of English Law 315 (3d ed. 1923). See 1 W.R. LaFave & A.W. Scott, Jr., Substantive Criminal Law § 3.12(i), at 421 (1986) ("[t]he difficulty in proving that the blow caused the death after so long an interval was obviously the basis of the rule"); 3 E. Coke, Third Institute *53 (if the person alleged to have been murdered died after a year and a day "it cannot be discerned, as the law presumes, whether he died of a stroke or poison, &c, or of a natural death; and in the

case of life, the rule of law ought to be certain").[1] In 1980, after complete review of the history, rationale, and current status of the rule, we abolished it, deeming it "anachronistic upon a consideration of the advances of medical and related science in solving etiological problems as well as in sustaining or prolonging life in the face of trauma or disease." *Lewis, supra* at 414-415.

The defendant contends that this court should replace the year and a day rule with a some other limiting rule. He contends that to have a potential prosecution hanging over his head indefinitely deprives him of due process and that, when death occurs so long after the injury, the trial would turn into a costly, time consuming, and confusing battle of the experts. In support of the need for a definite time period beyond which prosecution for murder is barred, the defendant cites our statement in *Lewis* that such "a task of adjustment is characteristically for the Legislature, but if not undertaken by that branch, may fall to the courts" (footnote omitted). *Id.* at 419. The Legislature has not acted to alter our conclusion and we have not been convinced that any new knowledge or fresh arguments require our further intervention.

Our research indicates that in no jurisdiction has a court abrogated the year and a day rule and subsequently imposed a new time limit on murder prosecutions. Eighteen other States do not follow the year and a day rule.[2] In four of these States, California, Maryland, Missouri, and Washington, it was the Legislature that replaced the year and a day rule. See Cal. Penal Code § 194 (West 1988 & Supp. 1999); Md. Ann. Code art. 27, § 415 (1996); Mo. Ann. Stat. § 565.003 (Vernon 1979 & Supp. 1999); Wash. Rev. Code Ann. § 9A.32.010 (West 1988 & Supp. 1999). Georgia, Illinois, New York, and Oregon held that failure to include the rule as part of the comprehensive criminal code

---

[1]It has also been suggested that the rule also originally mitigated the rigor of the English common law at a time that it allowed for a sentence of death for both murder and manslaughter. See *Commonwealth* v. *Ladd*, 402 Pa. 164, 173 (1960).

[2]In addition to these eighteen States, there are several States where the continued validity of the rule is in question. A Tennessee court has implied that the rule has been abolished, but held that the issue was moot. *State* v. *Ruane*, 912 S.W.2d 766, 774 (Tenn. Crim. App. 1995). Four more States, Colorado, Delaware, North Dakota, and Utah, have done away with the statute setting out the rule but the courts in these States have not addressed its continued viability. See *State* v. *Minster*, 302 Md. 240, 246 n.4 (1985).

adopted by the Legislatures in their States effected its abrogation. See *State* v. *Cross*, 260 Ga. 845, 845-846 (1991); *People* v. *Carrillo*, 164 Ill. 2d 144, 149-150, cert. denied, 515 U.S. 1146 (1995); *People* v. *Brengard*, 265 N.Y. 100, 107-108 (1934); *State* v. *Hudson*, 56 Or. App. 462, 465 (1982). And Connecticut determined that it is doubtful that the year and a day rule ever was a part of its common law. *Valeriano* v. *Bronson*, 209 Conn. 75, 90 (1988).

The nine remaining jurisdictions that have abrogated the rule have done so at the initiative of the judiciary. Four of those nine, Michigan, Ohio, Pennsylvania, and Rhode Island, have expressly or impliedly stated that the rule would not be replaced by a similarly definite time period. See *People* v. *Stevenson*, 416 Mich. 383, 393 (1982) ("Fears about murder convictions for death 5, 10, or even 20 years after the injury are therefore unfounded where proximate cause is proven beyond a reasonable doubt. If such proof is available, the conviction is justified"); *State* v. *Beaver*, 119 Ohio App. 3d 385, 395 (1997) ("Today, the length of time between the act and the result is only one consideration in assessing the prosecution's showing of proximate cause"); *Commonwealth* v. *Ladd*, 402 Pa. 164, 173-174 (1960) ("Society is free to prosecute murderers without a statutory limitation . . . [i]t is therefore not a strange idea to put no restriction of time upon the death of the victim and to require only proof of causation of conventional quality at the trial"); *State* v. *Pine*, 524 A.2d 1104, 1107 (R.I. 1987) ("We think this standard [proof beyond a reasonable doubt] is a sufficient safeguard for the criminal defendant. We do not find, therefore, that our abrogation of the year-and-a-day rule requires us to replace it with some other time period within which death must occur"). The remaining five jurisdictions that have judicially abrogated the rule, the District of Columbia, Florida, New Jersey, New Mexico, and North Carolina, have not committed themselves to a definite or indefinite time allowance. *United States* v. *Jackson*, 528 A.2d 1211, 1218 (D.C. 1987); *Jones* v. *Dugger*, 518 So. 2d 295, 298 (Fla. Dist. Ct. App. 1987); *State* v. *Young*, 77 N.J. 245, 252 (1978); *State* v. *Gabehart*, 114 N.M. 183, 186 (Ct. App. 1992); *State* v. *Vance*, 328 N.C. 613, 619-620 (1991).

As we explained in *Lewis*, a primary factor making the year and a day rule obsolete is the advance of medical knowledge and techniques. *Lewis, supra* at 414-415. Medicine can now

sustain the critically afflicted for months and even years beyond what might have been imagined only decades ago. Parallel progress has also been made in the development of diagnostic skills, so that problems of medical causation are more readily resolved. Modern pathologists are able to determine the cause of death with greater accuracy than was possible in earlier times and thus causation, even in complex cases, is a less difficult problem in modern day prosecutions. Although the defendant objects to the likely necessity of reliance on expert testimony in instances where death does not closely follow the act, neither this reliance on experts nor the presence of difficult issues of causation present unfamiliar problems for modern day courts. See *Jackson, supra* at 1216. Accordingly, the abrogation of the rule does not make the determination of guilt so inherently unreliable or undeterminable as to deprive a defendant of procedural due process.

Nor is it unjust that the perpetrator is exposed over an indefinite time to the possibility of a murder prosecution. It follows that the abrogation of the year and a day rule does not work a deprivation of substantive due process. There is no statute of limitations applicable to murder. See *Stevenson, supra* at 393 (if proof is available ten, fifteen, or twenty years after the injury, the conviction is justified; no repose or statute of limitations is available for murder); *Ladd, supra* at 174-175 ("Society is free to prosecute murderers without a statutory limitation, and it is possible that evidence and witnesses may be lost during a long interval between crime and trial. It is therefore not a strange idea to put no restriction of time upon the death of the victim and to require only proof of causation of conventional quality at the trial"). The possibility of a murder prosecution does hang over a potential defendant's head differently here than it does in cases where death immediately follows the precipitating act but the suspect evades detection or capture. But we fail to see why this difference should work a denial of due process in one case but not the other.

As in any criminal trial, proof of causation beyond a reasonable doubt is as much as any defendant may claim as a matter of right. *Lewis, supra* at 415, 419. Further, it is true as a general matter that, as the period between assault and the victim's death is prolonged, proof of causation may be more difficult. *Pine, supra* at 1107. This greater difficulty affects the ability of the prosecution to prove its case. *Id.* And jurors may bring a natural

skepticism to the claim that an act distant in time was the proximate cause of death.

The year and a day rule functioned as a rule of judicial economy based on an assessment of the likely ability to prove causation beyond a reasonable doubt. The decision to abrogate the rule was based on the notion that science had advanced to the point that the previous assessment was no longer appropriate. *Lewis, supra* at 414-415. Institution of a new time period between injury and death beyond which a defendant may not be prosecuted for murder is appropriate only if there is a time past which there is no significant number of cases in which the prosecution could satisfy its burden of proof. We have no basis for estimating what such a time may be, if, indeed, one exists at all. Although it will undoubtedly be difficult in many cases for the prosecution to prove causation where death is remote in time from the allegedly precipitating injury, in cases where this link can be proved, such as where a slow-acting poison is used or where a person purposely infects another with a virus such as HIV, prosecution should not be barred by some arbitrary time limit. As one court has observed, "it would be incongruous if developments in medical science that allow a victim's life to be prolonged were permitted to be used to bar prosecution of an assailant, where scientific evidence is presented to establish beyond a reasonable doubt that the defendant's acts proximately caused the victim's death." *Gabehart, supra* at 186. Nor should the availability of modern life-sustaining equipment and procedures ever raise "the specter of the choice between terminating life-support systems or allowing the defendant to escape a murder charge." *Stevenson, supra* at 392.

For the foregoing reasons we answer the judge's first question, "No," and therefore do not answer the remaining questions. We decline to adopt a rule providing a specific interval between injury and death after which the injuring party cannot be held legally responsible for the death and we affirm the Superior Court judge's denial of the defendant's motion to dismiss.

*So ordered.*