836 P.2d 102

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Tod G. GABEHART, Defendant–**
**Appellant.**

No. 13308.

Court of Appeals of New Mexico.

June 30, 1992.

**184**

Thomas J. Hynes, Hynes, Hale & Thrower, Farmington, for defendant-appellant.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

DONNELLY, Judge.

Defendant appeals his conviction for involuntary manslaughter. The dispositive issue asserted on appeal is whether the trial court erred in denying his motion to dismiss the charge against him under the "year-and-a-day" rule. We determine that the rule is applicable herein and reverse Defendant's conviction.

On April 11, 1988, Defendant was involved in an altercation with the victim. During the course of a fight between Defendant and the victim, the victim was thrown to the ground and struck his head on the pavement. Defendant called an ambulance and the victim was taken to a hospital. As a result of the injuries received in the altercation, the victim lapsed into a coma and never regained consciousness. On September 5, 1989, more than fifteen months following the altercation, the victim died. His death was attributable, in part, to his injuries received during his fight with Defendant. Following the death of the victim, Defendant was charged with voluntary manslaughter. He moved to dismiss the charges on the ground that the victim did not die within a year and a day of the time the injuries were sustained. The trial court denied the motion and Defendant was subsequently convicted of involuntary manslaughter.

## YEAR–AND–A–DAY RULE

■ No New Mexico decision has directly addressed the applicability of the year-and-a-day rule recognized at common law. Under the rule, if a person injured by an assailant survived beyond a year and one day after receiving the injuries, the defendant is excused from criminal culpability for the death. *See, e.g., Commonwealth v. Lewis,* 381 Mass. 411, 409 N.E.2d 771 (1980), *cert. denied sub nom. Phillips v. Massachusetts,* 450 U.S. 929, 101 S.Ct. 1386, 67 L.Ed.2d 360 (1981); *People v. Stevenson,* 416 Mich. 383, 331 N.W.2d 143 (1982); *State v. Young,* 77 N.J. 245, 390 A.2d 556 (1978); *Elliott v. Mills,* 335 P.2d 1104 (Okla.Crim.App.1959); *State v. Edwards,* 104 Wash.2d 63, 701 P.2d 508 (1985) (en banc). As observed in *Elliott,* absent legislative or judicial abolition of such rule, a majority of jurisdictions which have considered the rule's efficacy have determined that it constitutes a valid common-law defense to a charge of homicide. The court in *Elliott,* quoting from *State v. Dailey,* 191 Ind. 678, 134 N.E. 481, 481 (1922), observed:

> "Where there is no statute contravening the common-law rule that a party must die in a year and a day after the wound is inflicted to make the killing murder or manslaughter, the Legislature by its silence on the subject of time intended that the common-law rule should govern."

335 P.2d at 1110.

In discussing the historical origin of the year-and-a-day rule, Jeffrey F. Ghent, Annotation, *Homicide as Affected by Lapse of Time Between Injury and Death,* 60 A.L.R.3d 1323, 1325–26 (1974 & Supp.1991), notes:

> Most American jurisdictions still follow the common-law rule that in order to constitute punishable homicide, death must ensue within a year and a day from the infliction of a mortal wound. In some of these jurisdictions the rule derives its support from common law, in some from statutes expressly including this element in the definition of homicide, and in others from a more general consti-

tutional or statutory provision making common law applicable until repealed or overruled. [Footnotes omitted.]

The State concedes that the New Mexico Legislature adopted the common law into this state's criminal jurisprudence. *See* NMSA 1978, § 30–1–3 (Repl.Pamp.1984) (common law applicable in absence of provision of Criminal Code). The State also admits that no statutory provision purports to change the year-and-a-day rule. However, the State argues that the rule should not be applied in this case because (1) the defense has been eliminated by our supreme court's promulgation of an uniform jury instruction on proximate cause; (2) application of the rule should be limited to murder cases; and (3) even if the rule is determined to be applicable to manslaughter cases, the rule is anachronistic and should be abolished.

■ The State argues that the rule has already been judicially abrogated, *sub silentio*, by our supreme court's promulgation of an uniform jury instruction defining proximate cause for homicide cases. SCRA 1986, 14–251. We disagree. The latter instruction defines proximate cause and provides that, in order to convict a defendant of homicide, the jury must first find that the defendant caused the death of the victim and that the victim's death was brought about by the defendant's act which, in a natural and continuous chain of events, produced the death of the victim and without which the death would not have occurred. We do not believe that our supreme court, by adopting a general instruction defining proximate cause, intended to remove the common-law rule which recognized a limitation on the period of time that could elapse between the infliction of injury and the victim's ensuing death.

■ The definition set forth in Uniform Jury Instruction 14–251 does not directly negate the common-law year-and-a-day rule. The common-law rule recognized a conclusive presumption that the injury did not cause the death if the victim survived beyond a year and a day from the time of injury. *State v. Brown,* 21 Md.App. 91,

318 A.2d 257 (1974); *Elliott v. Mills.* Moreover, implied repeals of common law are disfavored and should be found to exist only where the purpose of the drafters is evident. *See Gallegos v. Lyng,* 891 F.2d 788 (10th Cir.1989); *cf. In re Guardianship Petition of Lupe C.,* 112 N.M. 116, 812 P.2d 365 (Ct.App.1991) (stating that implied repeals of statutory law disfavored).

■ The State cites two cases in support of its contention that the year-and-a-day rule does not apply to manslaughter cases. *State v. Hefler,* 310 N.C. 135, 310 S.E.2d 310 (1984); *Commonwealth v. Evaul,* 5 Pa.D. & C. 105 (1924). We find both unpersuasive. The *Hefler* court makes no citation to authority in support of its conclusion that the rule is inapplicable to cases of manslaughter, but instead relies simply upon the fact that it has never applied the rule to such a case in the past. Moreover, the court appears to have been influenced in part by the provisions of a statute, N.C.Gen.Stat. § 90–323 (1990), which defines brain death, and concluded that the evidence would support a finding that the victim was "dead" within the meaning of the statute approximately thirty-six hours following admission to the hospital. The court in *Evaul* declined to extend the rule to manslaughter cases based on its determination that "there appears to be no single reported case in which it has been applied to the misdemeanor of involuntary manslaughter." *Commonwealth v. Evaul,* 5 Pa.D. & C. at 106. We think the reasoning in these cases is at odds with historical recognition of the rule.

Courts in other jurisdictions have determined that at common law the year-and-a-day rule applied to all homicide cases, including manslaughter cases. *See, e.g., State v. Young,* 390 A.2d at 559 (quoting 3 Stephen, *History of the Criminal Law of England* at 7, 8 (1883), " 'No one is criminally responsible for a death which occurs upwards of a year and a day * * * after the act by which it was caused.' "); *Elliott v. Mills* (citing treatises recognizing, *e.g.,* the rule is an irrebuttable presumption of law preventing an assailant from being

punished for either murder or manslaughter, and that no person shall be adjudged to have killed another if the other person does not die within a year and a day of the injury); *see also State v. Brown*, 318 A.2d at 258 n. 1 (citing a 1908 English case in which the rule was applied to manslaughter prosecution); *cf. State v. Pine*, 524 A.2d 1104 (R.I.1987) (applying rule, without discussion, to manslaughter case). Review of these cases indicates that, at common law, the rule applied to manslaughter as well as murder cases.

■ The original reason for recognition of the rule was grounded upon the uncertainty of causation for the death of an individual where the death occurs more than a year and a day following the infliction of injuries upon the victim. *See State v. Young; State v. Pine.* As noted by 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* Section 3.12(i), at 421 (1986), "[t]he difficulty in proving that the blow caused the death after so long an interval was obviously the basis of the rule." Recent precedent, however, points out that due to modern advances in medical and criminal science and technology, the rationale behind the rule no longer exists. *See Commonwealth v. Lewis; People v. Stevenson; State v. Hefler; State v. Young; State v. Sandridge*, 365 N.E.2d 898 (Ohio Ct. of Common Pleas 1977); *State v. Pine.* In fact, retention of the rule is inconsistent with demonstrable medical evidence in "lingering death" situations. Advances in medical technology now permit victims, although severely injured, to be kept alive for extended periods of time. We agree with the reasoning of the court in *Hefler* that the basis for the rule has disappeared, and that it would be incongruous if developments in medical science that allow a victim's life to be prolonged were permitted to be used to bar prosecution of an assailant, where scientific evidence is presented to establish beyond a reasonable doubt that the defendant's acts proximately caused the victim's death.

The debate in some courts as to the continuing viability of the rule has sometimes turned on the question of whether the courts or the legislature should take action to abolish the rule. *Compare State v. Minster*, 302 Md. 240, 486 A.2d 1197 (1985) *and Elliott v. Mills* (determining that the legislature, not the courts, should abolish rule) *with People v. Stevenson* (deciding that since rule is common-law doctrine court may abrogate it). In New Mexico, courts have not hesitated to abolish common-law doctrines that have proven anachronistic. *See, e.g., State ex rel. Gesswein v. Galvan*, 100 N.M. 769, 676 P.2d 1334 (1984) (judiciary can put to rest obsolete common-law doctrine); *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975) (doctrine of sovereign immunity as recognized by judicial precedent held no longer viable; doctrine prospectively abolished). We conclude that the common-law rule was judicially adopted, it is subject to abrogation by the courts, and the rule should be abolished and no longer recognized as a bar to prosecution for homicide in New Mexico.

■ The remaining question before us then is whether abrogation of the common-law rule should be made applicable in the instant case. At the time Defendant committed the act for which he was convicted, the common-law rule was in effect in New Mexico, and Defendant could not have been convicted of homicide unless the victim died within a year and a day resulting from Defendant's wrongful act. Although some courts, emphasizing their belief that the rule is merely procedural or evidentiary in nature, have abolished the rule and applied such ruling to the case under consideration, *see People v. Snipe*, 25 Cal.App.3d 742, 102 Cal.Rptr. 6 (1972); *Commonwealth v. Ladd*, 402 Pa. 164, 166 A.2d 501 (1960); *cf. State v. Sandridge* (no discussion of issue of retroactivity in refusing to apply rule to case at bar), we think such reasoning is at odds with constitutional prohibitions against *ex post facto* legislation or court decisions, where the rule was in existence when the defendant committed the act in question.

A majority of the courts that have abolished the rule have refused to apply their decisions overturning the rule to the case pending on appeal. *See, e.g., Common-*

*wealth v. Lewis; People v. Stevenson; State v. Young; State v. Pine; State v. Edwards.* These courts have reasoned that applying such a decision retroactively would violate the constitutional prohibition against *ex post facto* laws or court decisions, because the effect of the decision would be to aggravate a crime from a lesser offense to homicide. *Id.* We adopt the reasoning of the latter decisions and conclude that abolition of such rule should be prospective in its effect. *See, e.g., State v. Pine; see also Hicks v. State.*

CONCLUSION

We hold that the common-law year-and-a-day rule should no longer be recognized in this jurisdiction and reject further application of the rule. The rule, although prospectively abolished, precludes the State from prosecuting Defendant for manslaughter herein. Accordingly, Defendant's conviction is reversed.

IT IS SO ORDERED.

APODACA and CHAVEZ, JJ., concur.