890 So.2d 1043 (2002)
Ralph Lynn KEY
v.
STATE.
CR-00-0305.
Court of Criminal Appeals of Alabama.
March 1, 2002.
Rehearing Denied May 24, 2002.
*1045 John William (Bill) Cole, Birmingham (withdrawn 01/26/2004); Sondra K. McDaniel, Jemison; and M. Richard Hughes, Birmingham, for appellant.
William H. Pryor, Jr., atty. gen., and Cecil G. Brendle, Jr., asst. atty. gen., for appellee.
McMILLAN, Presiding Judge.
The appellant appeals from his convictions for manslaughter and for leaving the scene of an accident in which someone was injured, violations of § 13A-6-2(3), Ala.Code 1975, and § 32-10-1, Ala.Code 1975, respectively. He was sentenced as a habitual offender to life imprisonment for the manslaughter conviction and to 99 years' imprisonment on the leaving-the-scene-of-an-accident conviction, with the sentences to run concurrently.
The evidence at trial tended to show that on March 28, 1997, the victim, Brian Keith Rollo, was struck by a vehicle driven by the appellant. The State presented expert testimony that as a result of the accident, the victim suffered a severe brain-stem injury and fell into a persistent vegetative state. Approximately 18 months later, on October 2, 1998, the victim died as a result of complications from the injuries incurred in the motor-vehicle accident.

I.
The appellant argues that the trial court erred in denying his motion to dismiss Counts I and II of the indictment charging him with murder and with reckless murder, violations of § 13A-6-2(a)(1), and § 13A-6-2(a)(2), Ala.Code 1975, respectively, based upon the common-law "year-and-a-day rule."[1] He argues that because the State of Alabama applies the common-law theory that for the cause of death to be attributable to the charged offense, the victim must have died within one year and a day of the injury, and because the victim died approximately 18 months after the *1046 accident, he should not have been prosecuted for homicide or any of its lesser-included offenses.
The year-and-a-day rule is a part of the common law of this State. "Pursuant to the common law rule, a defendant can be prosecuted for homicide only if the victim dies within one year and a day of the defendant's wrongful act." Woods v. State, 709 So.2d 1340, 1346-47 n. 3 (Ala.Crim.App.1997). See Burks v. State, 600 So.2d 374, 382 (Ala.Crim.App.1991) ("The common law `year-and-a-day rule' prevails in Alabama."). See also Smith v. State, 354 So.2d 1167 (Ala.Crim.App.1977); Flannagin v. State, 48 Ala.App. 559, 266 So.2d 637 (1971). See also § 13A-1-4, Ala.Code 1975, which, in referring to the codification of the current Criminal Code of Alabama, provides, "No act or omission is a crime unless made so by this title or by other applicable statute or lawful ordinance." Additionally, the Commentary to § 13A-1-4 states in pertinent part:
"The original draft of this section included an explicit provision to abolish common law crimes, which is a feature of most modern criminal codes; but the Advisory Committee considered such provision impolitic and also, unnecessary under a comprehensive Criminal Code, so it was deleted. To the extent that modern crimes involve common law definitions, such definitions usually will be stated in the Criminal Code. To the extent that they require alteration, most, again, will be effected by the Criminal Code. Common law jurisdiction cannot be exercised as to purely statutory offenses, nor in cases of common law offenses for which punishment is prescribed by statute. Tucker v. State, 42 Ala.App. 477, 168 So.2d 258 (1964). Thus, § 1-3-1, which continues in force the common law `except as from time to time it may be altered or repealed by the legislature,' remains intact, although its future field of operation may be reduced.'"
(Emphasis added.)
However, because of the modern advances in medicine and the ability to maintain and preserve life, as well as the advances in scientific crime detection, and the modern legal and judicial trend away from the application of the rule, this Court is of the opinion that it must consider whether the common-law year-and-a-day rule is currently a viable principle of criminal law in Alabama. We begin our analysis of this issue with a brief overview of the historical development of the common-law rule. The Supreme Court of Tennessee, in judicially abrogating this rule, first undertook an extensive examination of its roots and historical development, as well as its tendencies and applications to modern society and its laws. State v. Rogers, 992 S.W.2d 393 (Tenn.1999), affirmed, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001).
"The year-and-a-day rule is deeply rooted in the common law. Its lineage is generally traced to the thirteenth century where the rule was originally utilized as a statute of limitations governing the time in which an individual might initiate a private action for murder known as `appeal of death.' See, e.g., United States v. Jackson, 528 A.2d 1211, 1214 (D.C.1987); Commonwealth v. Lewis, 381 Mass. 411, [413-414,] 409 N.E.2d 771, 773 (1980); People v. Stevenson, 416 Mich. 383, [389,] 331 N.W.2d 143, 145 (1982); State v. Vance, 328 N.C. 613, [616,] 403 S.E.2d 495, 497 (1991); Commonwealth v. Ladd, 402 Pa. 164, [167,] 166 A.2d 501, 503 (1960); State v. Pine, 524 A.2d 1104, 1105 (R.I.1987); Comment, Taming a Phoenix: The Year-And-A-Day Rule in Federal Prosecutions for Murder, 58 U.Chi. *1047 L.Rev. 1337, 1338 (1992). The `appeal of death' was a private and vindictive action instituted by an interested party and derived from the Germanic custom of `weregild,' or compensation for death. Id. `Appeal of death' actions became obsolete and were abolished in 1819. Lewis, 409 [381 Mass. at 413,] N.E.2d at 772. By the eighteenth century, however, the year-and-a-day rule had been extended to the law governing public prosecutions so that a homicide prosecution could not be brought unless the victim died within a year and one day of the injury. Jackson, 528 A.2d at 1214; Lewis, 409 [381 Mass. at 413,] N.E.2d at 772.
"Though the rule began in England, its applicability to criminal prosecutions in this country was acknowledged by the United States Supreme Court in 1894 as follows:
"`In cases of murder the rule at common law undoubtedly was that no person should be adjudged "by any act whatever to kill another who does not die by it within a year and a day thereafter ..." And such is the rule in this country in prosecutions for murder, except in jurisdictions where it may be otherwise prescribed by statute.

"Louisville, Evansville, & St. Louis R.R. co. v. Clarke, 152 U.S. 230, 239, 14 S.Ct. 579, 581, 38 L.Ed. 422 (1894) (citations omitted) (civil wrongful death action)....
"Three justifications are ordinarily given for the common law rule. The first and most often cited justification is that thirteenth century medical science was incapable of establishing causation beyond a reasonable doubt when a great deal of time had elapsed between the injury to the victim and the victim's death. Therefore, it was presumed that a death which occurred more than a year and a day from the assault or injury was due to natural causes rather than criminal conduct. See State v. Ruane, 912 S.W.2d 766, 774 (Tenn.Crim.App.1995); People v. Snipe, 25 Cal.App.3d 742, [745,] 102 Cal.Rptr. 6, 7 (1972); Jackson, 528 A.2d at 1216; Jones v. Dugger, 518 So.2d 295, 296 (Fla.Ct.App.1987); State v. Cross, 260 Ga. 845, 401 S.E.2d 510, 511 (1991); People v. Carrillo, 164 Ill.2d 144, [150,] 207 Ill.Dec. 16, [19,] 646 N.E.2d 582, 584 (1995); Lewis, [381 Mass. at 414,] 409 N.E.2d at 773; Stevenson, [416 Mich. at 390,] 331 N.W.2d at 145; State v. Gabehart, 114 N.M. 183, [186,] 836 P.2d 102, 105 (1992); Vance, [328 N.C. at 613,] 403 S.E.2d at 495; State v. Hefler, 310 N.C. 135, [139,] 310 S.E.2d 310, 313 (1984); State v. Sandridge, 365 N.E.2d 898, 899 (Ohio Ct.C.P.1977); Ladd, [402 Pa. at 172-73,] 166 A.2d at 506; Pine, 524 A.2d at 1106.
"Second, it has often been said that the rule arose from the early function of the jury as a reporter of the happenings of the vicinage. Even if expert medical testimony had been adequate to establish causation at common law, it would not have been admissible. Unlike current procedure, in early English courts, jurors were required to rely upon their own knowledge to reach a verdict, and they could not rely upon the testimony of witnesses having personal knowledge of the facts or upon expert opinion testimony. Jackson, 528 A.2d at 1216; Lewis, 409 [381 Mass. at 414,] N.E.2d at 773; Stevenson, [416 Mich. at 392,] 331 N.W.2d at 145-46; Sandridge, 365 N.E.2d at 899.
"Finally, the rule has occasionally been characterized as an attempt to ameliorate the harshness of the common law practice of indiscriminately imposing the death penalty for all homicides  first degree murder and manslaughter alike. Jackson, 528 A.2d at 1216; Lewis, *1048 [381 Mass. at 414,] 409 N.E.2d at 773; Hefler, [310 N.C. at 139,] 310 S.E.2d at 313; Ladd, [402 Pa. at 173,] 166 A.2d at 506.
"Despite its early common law recognition and near universal acceptance, the rule has fallen into disfavor and has been legislatively or judicially abrogated by the vast majority of jurisdictions which have recently considered the issue. Most courts describe the rule as outmoded and obsolete since the reasons justifying its recognition no longer exist. In characterizing the rule as an anachronism, courts have particularly emphasized the many advances of medical science. For example, the Ohio Court of Common Pleas stated:
"`[t]oday, the retention of the "year and a day" rule is clearly an anachronism. The jury may now rely on the testimony of expert witnesses and need not decide issues on the basis of their own individual knowledge. Furthermore, since great advances have been made in scientific crime detection and scientific medicine, the doubt that a mortal blow is the cause of death, when death ensues a year and a day after the blow, has been largely removed. Consequently, a period of a year and a day after which death is conclusively presumed to result from natural causes is no longer realistic.'
"Sandridge, 365 N.E.2d at 899. Likewise, in holding that the rule had been implicitly abrogated by its omission from a comprehensive criminal code enacted by the legislature, the Illinois Supreme Court stated:
"`[m]oreover, we note the legislature's wisdom in abolishing the year-and-a-day rule. It was a remnant from the days when medicine and science, both as to diagnosis and treatment, were so unsophisticated that mortally wounded persons commonly died shortly after the infliction of a grievous wound. In such circumstances, it was reasonable to presume that if a wounded person died more than a year from the time of the wound, the cause of death was other than the wound. Modern medicine, however, allows doctors to employ a variety of extraordinary, even heroic, means to save and prolong the lives of victims for years, as opposed to days or months. Also, diagnostic post-mortem pathological procedures can now discover and define the cause of death with great particularity and precision.'
"Carrillo, [164 Ill.2d at 150,] 207 Ill.Dec. 16, [at 19,] 646 N.E.2d at 585. Similarly, in judicially abrogating the rule, the Michigan Supreme Court stated:
"`[t]he advances of modern medical science, by extending life and by providing strong evidence of the cause of death, have undermined the wisdom of the irrebuttable presumption that the death of one who expires more than a year and a day after receiving an injury was not caused by the injury. The availability of modern life sustaining equipment and procedures raises the specter of the choice between terminating life-support systems or allowing the defendant to escape a murder charge. The presumption was wooden and arbitrary from the beginning, since it prevented a murder conviction even in those rare cases when causation could be proved. Now, when medical causation can be proven with much greater frequency and certainty, the old rule is simply too often demonstrably wrong to be upheld.
"Stevenson, [416 Mich. at 392,] 331 N.W.2d at 146. The North Carolina Supreme Court took `judicial notice of the rapid development and proliferation *1049 of the art and science of medicine and crime detection,' and stated:
"`Sophisticated medical tests, analyses, and diagnoses allow positive evidence to be presented to a jury on questions of causation in criminal prosecutions. For the courts to remain judicially oblivious of these advances when considering whether to extend an ancient common law rule would be folly. We must let the light of scientific development illuminate the legal issues of today. It would be incongruous indeed that medical science has developed to the point that it may prolong human life for long periods if that same development be utilized to bar conviction for a killer by prolonging the life of his victim.'
"Hefler, [310 N.C. at 140,] 310 S.E.2d at 313. Finally, the Massachusetts Supreme Court observed that the rule is `anachronistic' considering `the advances of medical and related science in solving etiological problems as well as in sustaining or prolonging life in the face of trauma or disease' and emphasized that `the relatively short time limit is seen as not only capricious but as senselessly indulgent toward homicidal malefactors.' Lewis, [381 Mass. at 414-418,] 409 N.E.2d at 773.
"Although the rule has been judicially abrogated in a number of jurisdictions, none of those courts have adopted a new time limit to replace the year-and-a-day rule. In declining to do so, courts emphasize that no arbitrary time frame is needed because abolition of the year-and-a-day rule does not relieve the State of its burden of proving causation beyond a reasonable doubt. See e.g. Jackson, 528 A.2d at 1218 (`Nor is it to suggest that abrogation of the rule would remove all limitations on assessing culpability; limitations necessarily would exist by virtue of the requirements of due process and the government's burden to prove causation beyond a reasonable doubt.'); Stevenson, [416 Mich. at 392,] 331 N.W.2d at 146 (`Of course, abolition of the rule would not relieve the prosecution of its duty to prove all of the elements of the crime, including proximate causation, beyond a reasonable doubt.') Sandridge, 365 N.E.2d at 899 (`Finally, it must be emphasized that the refusal to apply the `year and a day' rule does not deprive the defendant of any fundamental right. In all homicide cases, the burden always falls upon the prosecution to prove proximate causation that death flowed from the wrongful act of the defendant. That must be the critical determinant, and not the expiration of some archaic, arbitrary time period.') These courts also point out that there is no statute of limitations for murder prosecutions and find implementation of an arbitrary time limit which bars murder prosecutions if the victim does not die within a specified period of time inconsistent with public policy. See e.g. Stevenson, [416 Mich. at 393,] 331 N.W.2d at 146 (`No repose or statute of limitations is available for murder in this state.') Ladd, [402 Pa. at 173-74] 166 A.2d at 506 (`Society is free to prosecute murderers without a statutory limitation, and it is possible that evidence and witnesses may be lost during a long interval between crime and trial. It is therefore not a strange idea to put no restriction of time upon the death of the victim and to require only proof of causation of conventional quality at the trial.')
"Therefore, regardless of whether its demise was achieved by legislative or judicial action, in other jurisdictions, abolition of the year-and-a-day rule has not altered the general principle that causation be proven beyond a reasonable *1050 doubt. Its abolition simply allows the State to have the opportunity to attempt to prove causation."
State v. Rogers, 992 S.W.2d at 396-99 (footnote omitted).
In the context of common-law doctrines such as the year-and-a-day rule, there often arises a need to clarify or even to reevaluate prior opinions as new circumstances and fact patterns present themselves. "Such judicial acts, whether they may be characterized as `making' or `finding' the law, are a necessary part of the judicial business in States in which the criminal law retains some of its common law elements." Rogers v. Tennessee, 532 U.S. 451, 461, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001). See also Dupuis v. Hand, 814 S.W.2d 340, 345 (Tenn.1991) (This Court has "`not hesitated to abolish obsolete common-law doctrines,'" and we have recognized that "`we have a special duty to do so where it is the Court, rather than the Legislature, which has recognized and nurtured'" the common-law rule. (Quoting Hanover v. Ruch, 809 S.W.2d 893 (Tenn.1991).) This Court is in agreement with the decisions of other jurisdictions that have judicially abrogated the year-and-a-day rule on grounds that it is an outdated relic of the common law. In deciding to abolish the common-law rule based on changed circumstances, including advancements in scientific and medical knowledge, general logic, and experience, we take note that the appellant, in brief, has failed to provide this Court with any sound reasons for retaining the rule, other than it is supported by current Alabama caselaw. That argument does not provide sufficient justification for adherence to a rule that has completely outlived its intended purpose.
The ruling of the trial court in denying the appellant's motion to dismiss was correct.

II.
The appellant argues that the trial court erred in refusing to order the State to produce the prior statement of a State witness, Joy Tolbert, after she testified, or, in the alternative, to conduct an in camera inspection of the statement. In support of his argument, the appellant relies on the authority of Ex parte Pate, 415 So.2d 1140 (Ala.1981).
In Ex parte Pate, the Alabama Supreme Court held that under certain circumstances the State must produce statements made by witnesses for the prosecution after the witness testifies at trial. The Pate Court stated:
"As we understand the law, whether production of a particular document can be compelled depends on (1) the nature of the document, that is, whether it is the witness's own words, and, (2) the time when production is sought, that is, before trial, or during the trial after the witness has testified.
The `statements' in this case were in writing, and each witness testified that they signed the statements, thereby authenticating them; therefore, we conclude that the statements were in the `witness's own words,' as those terms are used in the cases. Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959).
"....
"In such cases, the defendant, upon laying a proper predicate, is entitled to have the Court, at least, conduct an in camera inspection as outlined in Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). The trial court could determine initially (1) whether the statement made by the witness before trial differed in any respects from statements made to the jury during *1051 trial, and (2) whether the statement requested was of such a nature that without it the defendant's trial would be fundamentally unfair. Cooks v. State, 50 Ala.App. 49, 276 So.2d 634 (1973).
Id. at 1142-44. (emphasis omitted).
The record indicates that the State's witness, Joy Tolbert, testified on direct examination that she had been in the appellant's vehicle, with both the appellant and the victim, just prior to the incident. The appellant and the victim became involved in an altercation inside the vehicle. She got out of the vehicle, and shortly thereafter saw someone fall down, heard tires squealing and then heard a "sound like thunder". Tolbert and the appellant married on April 1, 1997, approximately three days after the incident. She testified that she was not aware at that time that the appellant was married to someone else. She testified that she later learned the only reason the appellant married her was "so [she] wouldn't talk." The witness further testified that "pretty soon," approximately a "week or two," after the incident occurred on March 28, 1997, she and the appellant went back to the scene of the accident. The witness testified that the appellant told her that "he had to back up off of Brian Keith Rollo to get him out from under the car."
During cross-examination, the witness testified that she had informed State Investigator Bill Dickinson about the appellant's statement when he came to question her "over a year" later. She testified that she believed that her statement was taped, although she had not heard it. She further testified that she had seen a transcript. The record, however, does not indicate when the witness viewed the transcript or whether she had signed her statement. Moreover, there is no indication that the statement was used to refresh the witness's recollection; rather, her testimony was based upon her memory of the appellant's statement to her.
Here, the appellant did not lay a proper predicate justifying an in camera inspection of the witness's statement. Specifically, there was no evidence indicating that the witness had signed or otherwise had authenticated her statement to the investigator. There was no evidence indicating that her statement differed from her testimony at trial. Lastly, there was no showing that the trial court's failure to require the State to produce the statement caused the appellant's trial to be fundamentally unfair.
The record does not reveal any abuse of the trial court's discretion in refusing to order the State to produce the statement, or in refusing to conduct an in camera inspection.

III.
The appellant argues that the trial court erred in denying his motion for a mistrial after the State's witness, Joy Tolbert, testified that the appellant had been in jail in Georgia. He contends that the trial court gave an insufficient curative instruction.
The record indicates that during Tolbert's direct examination, she testified that the relationship between her and the appellant had been interrupted while he was in jail in Georgia. Defense counsel objected, and asked the trial court to give a curative instruction, and then moved for a mistrial. The trial court denied the motion and instructed the jury to disregard anything the witness had said about the appellant's being in jail. She further instructed the witness to listen to the questions and to give a specific answer to the question that was asked. Defense counsel did not ask for further curative instructions. There is no indication from the record that the jury failed to follow the *1052 trial court's instructions. Eaton v. State, 759 So.2d 562 (Ala.Crim.App.1999). Therefore, there is no indication of undue prejudice.

IV.
The appellant argues that the trial court erred in overruling his objection to the admission of the grand jury testimony of Ruby Hunter as past recollection recorded. He argues that the State failed to lay a proper predicate.
The record indicates that the State called Ruby Hunter, the appellant's aunt, as a witness. She testified that, due to her medication, she could not remember what the appellant had told her after the incident. Between the incident and the trial, Hunter had testified before the grand jury. She stated that she would have told the grand jury the truth. The State then offered her testimony before the grand jury as a past recollection recorded.
Rule 803(5), Ala. R. Evid., defines recorded recollection as follows:
"A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."
See C. Gamble, McElroy's Alabama Evidence, § 116.03(1) (5th ed.1996).
No error occurred in the admission of the witness's grand jury testimony as past recollection recorded. Moreover, the record reveals that the witness's testimony was cumulative of the prior testimony of her son, Clarence Hunter, Jr.

V.
The appellant argues that the trial court improperly allowed his girlfriend to testify over his marital privilege assertion. In support of his argument, he contends that even though he is a bigamist, his marriage to Tolbert would cause the spousal privilege to attach.
The record indicates that before trial, evidence was presented from which the trial court found that the appellant was married to a Patricia Key at the time he married his girlfriend, Joy Tolbert, in an attempt to prevent her from testifying, the trial court found that there was no marital privilege between the appellant and Tolbert and allowed her to testify.
The spousal privilege applies only if the parties have a valid marriage. Because Alabama does not permit polygamous marriage, see § 13A-13-1, Ala.Code 1975, and because the appellant was validly married to someone else at the time he married the witness, his argument must fail for lack of merit. See C. Gamble, McElroy's Alabama Evidence, § 103.01(4)(c) (5th ed.1996).

VI.
The appellant argues that the trial court improperly admitted the victim's medical records from the University of Alabama at Birmingham hospital through the testimony of Dr. Charles A. Wiggins, who treated the victim from the time he left the hospital until his death. Additionally, he argues that certain portions of the medical records should not have been admitted because "they contained hearsay information from outside sources regarding the cause and nature of the injury sustained by Rollo."
*1053 Because the record indicates that the hospital records were certified by the custodian of the records, Ernestine Hendrix, in accordance with § 12-21-7, Ala.Code 1975, they were properly admitted into evidence. Additionally, the record indicates that the prosecutor offered to allow the appellant to "go through and find the parts of these record that he is objecting to." However, the prosecutor argued that the findings, the diagnosis, of what people see in these records is admissible under the hospital records exception." The appellant declined to do so. No error occurred here.
The judgment of the trial court is affirmed.
AFFIRMED.
BASCHAB, J., concurs. SHAW, J., concurs in part and dissents in part as to the rationale, and concurs in the result, with opinion, joined by COBB and WISE, JJ.
SHAW, Judge, concurring in part and dissenting in part as to the rationale and concurring in the result.
I concur with most of the discussion in the main opinion, and I concur to affirm the judgment.
However, I write specially to express my agreement with the State's arguments (1) that, by enacting the Alabama Criminal Code, the Legislature intended to supersede the common-law year-and-a-day rule and (2) that even if it did not, this Court has the authority to abolish the application of the common-law rule without running afoul of the separation-of-powers doctrine in Alabama. See Art. III, §§ 42 and 43, Ala. Const.1901.
Section 1-3-1, Ala.Code 1975, provides:
"The common law of England, so far as it is not inconsistent with the Constitution, laws, and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature."
(Emphasis added.)
Pursuant to its constitutional authority to define criminal offenses and to fix the punishment for crime, the Alabama Legislature enacted the Alabama Criminal Code, which took effect January 1, 1980. The stated purpose of the Criminal Code was "[t]o provide an entirely new criminal code for the State of Alabama; defining offenses, fixing punishment; repealing numerous specific code sections and statutes that conflict herewith as well as all other laws that conflict with this act." Ala. Acts 1977, Act No. 607. See also § 13A-1-3, Ala.Code 1975; and § 13A-1-6, Ala.Code 1975, which states: "All provisions of this title shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law, including the purposes stated in Section 13A-1-3."
Section 13A-1-4, Ala.Code 1975, provides:
"No act or omission is a crime unless made so by this title or by other applicable statute or lawful ordinance."
The Commentary to § 13A-1-4 states, in part:
"The original draft of this section included an explicit provision to abolish common law crimes, which is a feature of most modern criminal codes; but the Advisory Committee considered such provision impolitic and also, unnecessary under a comprehensive Criminal Code, so it was deleted. To the extent that modern crimes involve common law definitions, such definitions usually will be stated in the Criminal Code. To the extent that they require alteration, *1054 most, again, will be effected by the Criminal Code. Common law jurisdiction cannot be exercised as to purely statutory offenses, nor in cases of common law offenses for which punishment is prescribed by statute. Tucker v. State, 42 Ala.App. 477, 168 So.2d 258 (1964). Thus, § 1-3-1, which continues in force the common law `except as from time to time it may be altered or repealed by the legislature,' remains intact, although its future field of operation may be reduced."
(Emphasis added.)
Section 13A-1-7(a), Ala.Code 1975, states in part:
"The provisions of this title shall govern the construction of and punishment for any offense defined in this title and committed after 12:01 A.M. January 1, 1980, as well as the construction and application of any defense to a prosecution for such an offense."
The Commentary to § 13A-1-7 notes that "[a]fter the effective date of the Criminal Code, it will control the criminal law, both in the Criminal Code itself and in other provisions that define criminal offenses."
Section 13A-6-2(2), Ala.Code 1975, one of the statutes under which the appellant in the present case was convicted, provides:
"Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person."
(Emphasis added.) Section 13A-2-5, Ala.Code 1975, entitled "Causal relationship between conduct and results; relationship to mental culpability," states:
"(a) A person is criminally liable if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was sufficient to produce the result and the conduct of the actor clearly insufficient.

"(b) A person is nevertheless criminally liable for causing a result if the only difference between what actually occurred and what he intended, contemplated or risked is that:
"(1) A different person or property was injured, harmed or affected; or
"(2) A less serious or less extensive injury or harm occurred.
"(c) When causing a particular result is a material element of an offense for which absolute liability is imposed by law, the element is not established unless the actual result is a probable consequence of the actor's conduct."
(Emphasis added.) The Commentary to § 13A-2-5 notes:
"Rules governing causation were not covered by Alabama statutes and only sporadically in the cases. There has been difficulty in formulating such rules because of the varying factual situations encountered in which two or more factors were the `cause' of the result, especially homicide.
"Following the lead of other modern criminal codes, this section is a modified `but for' test, with an express exclusion of those situations in which the concurrent cause was clearly sufficient to produce the result and the defendant's conduct clearly insufficient. Cf. Proposed New Federal Criminal Code § 305, Proposed Revision Texas Penal Code § 6.04, Michigan Revised Criminal Code § 320, New Jersey Penal Code § 2C:2-3, Model Penal Code § 2.03. If the actual result is not within the contemplation of the actor, or within the area of risk of which he should have been aware, he is not deemed to have `caused' the result. But if the difference is only one concerning *1055 which person or what property would be affected by defendant's act, or one of the degree of harm which would result, he is still held to have `caused' the result.
"While this section may not be useful in all cases where causation must be explained, it is intended as an aid to clarification whenever it does apply. It is important to note that `but for' is a minimal requirement as there may be additional causal requirements imposed by the section defining the offense. Moreover, merely establishing causation does not necessarily establish criminality. The prosecution must still prove whatever particular mental culpability is required under the section under which the prosecution is brought."
Based on my examination of the Criminal Code, I can find no provision expressly altering or repealing the year-and-a-day rule. On the other hand, I can find no indication that the Legislature intended to retain the year-and-a-day rule as part of its definition of causation in homicide cases. To the contrary, it is significant, I think, that the Legislature specifically adopted a modified "but for" test of causation  a test that takes into consideration concurrent causes and that does not refer to any time limitations with respect to the imposition of criminal liability. I find persuasive the State's argument that, by adopting such a specific definition of causation as part of a comprehensive criminal code, the Legislature intended to supersede application of the common law rule.
Four members of the Alabama Supreme Court recognized in Swartz v. United States Steel Corp., 293 Ala. 439, 304 So.2d 881 (1974), that any common-law rule that is inconsistent with the Constitution, laws, or institutions of this State is not a "rule of decision" that this Court is bound to recognize and follow. Justice Harwood, writing for the Court in Swartz, noted:
"The common law is decisional law. It is not frozen into unchangeable tablets of stone. In 1835, Justice Story in his work `Miscellaneous Writings,' at page 307, wrote:
"`The common law is gradually changing its old channels and wearing new.'
"In Hurtado v. California (1884), 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232, the United States Supreme Court wrote:
"`This flexibility and capacity for growth and adaption is the peculiar boast and excellence of the common law.'
"This court has written in Harkness v. Sears & Walker, 26 Ala. 493:
"`The common law of England (as has been well remarked by the Supreme Court of the United States) is not to be taken in all respects as to be that of America.'
"In Woodmen of the World Life Ins. Soc. v. Guyton, 239 Ala. 216, 194 So. 655, this court wrote:
"`The common law is not static, but is constantly undergoing change, and extension, to meet the changing conditions, due to the ever expanding business and social fabric.'
"Title 1, Section 3, aforementioned [now § 1-3-1, Ala.Code 1975], we think clearly reflects this invitation to change and growth in the common law of Alabama. While this section provides that the common law of England shall be the rule of decisions, except as it may be altered or repealed by the legislature, it further provides such law shall apply so far as it is not inconsistent with the Constitution, laws, and institutions of this state, and the common law together with the laws and institutions shall be the rule of decisions.

*1056 "....
"We have found no decision defining `institutions' in the context of its employment in Title 1, Section 3. We think, however, as used in Title 1, Section 3, the words `institutions' must be construed to mean the customs, mores, and conditions prevailing at the time the matter in question is being considered."
293 Ala. at 442-44, 304 So.2d at 883-85.
The main opinion in the present case frames the issue thusly:
"However, because of the modern advances in medicine and the ability to maintain and preserve life, as well as the advances in scientific crime detection, and the modern legal and judicial trend away from the application of the rule, this Court is of the opinion that it must consider whether the common-law year-and-a-day rule is currently a viable principle of criminal law in Alabama."
890 So.2d at 1046.
Based on the statutory references above, I believe that the Legislature intended to supersede the year-and-a-day rule by the enactment of a specific definition of causation in the Criminal Code. However, to the extent that I may be found in error in this observation, I believe that, viewed objectively, the common-law rule is at least facially inconsistent with the "laws [a modern, comprehensive Criminal Code] and institutions [the changing conditions referred to in the main opinion]" of this State and, therefore, that this Court is in no way bound to follow it as a "rule of decision" in Alabama.
NOTES
[1] Count II of the indictment was nol-prossed by the State subsequent to the trial court's entry of its judgment based on the jury's verdicts of guilt.